MICHIGAN LAW ENFORCEMENT UNION, TEAMSTERS LOCAL
129 v CITY OF HIGHLAND PARK

Docket No. 73775. Submitted July 11, 1984, at Detroit.—Decided
October 15, 1984. Leave to appeal applied for.

The collective-bargaining agreement between the City of High-
land Park and the Michigan Law Enforcement Union, Team-
sters Local 129, the union representing the regular sworn
police officers of the City of Highland Park, expired on June 30,
1982. Two days earlier, the union had filed a petition with the
Michigan Employment Relations Commission for compulsory
arbitration of the labor dispute between the union and the city.
In June, 1983, the city enacted an ordinance establishing an
auxiliary police force with substantially the same functions
performed by some of the regular sworn officers. The union
filed an unfair labor practice charge with the MERC alleging
that the city had violated the public employment relations act
by creating an auxiliary police force with substantially similar
duties as those of some of the regular sworn officers and
employing auxiliary police officers while regular sworn police
officers who could perform the functions assigned to the auxil-
iary police were on lay-off status. The union also filed a com-
plaint against the city and others in Wayne Circuit Court
seeking injunctive relief. Following a show cause hearing, the
court, Harry J. Dingeman, J., entered an order restraining
defendants from implementing the ordinance during the pen-

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 126.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 128.
[4] 48A Am Jur 2d, Labor and Labor Relations § 1735.
[5] 48A Am Jur 2d, Labor and Labor Relations § 1773.
Validity and construction of statutes or ordinances providing for
arbitration of labor disputes involving public employees. 68
ALR3d 885.
[6] 48 Am Jur 2d, Labor and Labor Relations §§ 1069, 1321.
Employer's decision to have work done by independent contractors
rather than by employees as unfair labor practice. 6 ALR3d 1148.

dency of the compulsory arbitration proceedings before the MERC. Defendants appeal. *Held:*

1. The defendant city had the power and authority to create an auxiliary police force through the passage of the ordinance in question.

2. The issue of whether the ordinance violates the public employment relations act must be resolved by the MERC since it has exclusive jurisdiction over claims of unfair labor practices.

3. The decision to create an auxiliary police force effected a change in the conditions of employment for the members of plaintiff union. Such a change violates the status quo provision of the compulsory arbitration act. The order restraining defendants from implementing the ordinance during the pendency of arbitration proceedings was properly issued.

Affirmed.

1. MUNICIPAL CORPORATIONS — HOME RULE CITIES — CITY DEPARTMENTS.

The Michigan Constitution grants home rule cities broad authority over municipal concerns; consistent with the constitution, the home rule act provides for the establishment of any department that a home rule city may deem necessary for the general welfare of the city (Const 1963, art 7, § 22; MCL 117.4j; MSA 5.2083).

2. MUNICIPAL CORPORATIONS — HOME RULE CITIES — JUDICIAL CONSTRUCTION.

The home rule act was intended to confer upon cities exclusive rights in the conduct of their affairs not in conflict with the constitution or general laws and, therefore, is to be liberally construed (MCL 117.1 *et seq.;* MSA 5.2071 *et seq.).*

3. MUNICIPAL CORPORATIONS — HOME RULE CITIES — ORDINANCES — CITY CHARTER.

A home rule city may not pass an ordinance which is contrary to its charter; if the authority to pass an ordinance is not granted by the charter, either expressly or impliedly, such ordinance is void.

4. LABOR RELATIONS — UNFAIR LABOR PRACTICES — MICHIGAN EMPLOYMENT RELATIONS COMMISSION.

The Michigan Employment Relations Commission has exclusive jurisdiction over claims of unfair labor practices (MCL 423.216; MSA 17.455[16]).

5. Labor Relations — Compulsory Arbitration Act — Status Quo
   — Conditions of Employment.

Courts, in determining what constitutes a "condition of employ-
ment" as that term is used in the status quo provision of the
compulsory arbitration act, may look to cases defining the
subjects of mandatory bargaining under the public employment
relations act and to federal precedents established in interpret-
ing similar provisions of federal labor relations legislation
(MCL 423.201 *et seq.,* 423.243; MSA 17.455[1] *et seq.,*
17.455[43]).

6. Labor Relations — Collective Bargaining — Subcontracting.

Three factors are crucial in determining whether an employer's
decision to subcontract work that was formerly done by em-
ployees is a subject of mandatory bargaining: (1) if the decision
to subcontract does not alter the employer's basic operation; (2)
if there is no capital investment or recoupment; and (3) if the
employer's freedom to manage his business would not be signifi-
cantly abridged by requiring bargaining.

*Sherman & Sherman, P.C.* (by *Larry H. Sher-
man),* for plaintiff.

*Raymond F. Clevenger, P.C.* (by *Raymond F.
Clevenger),* and *Norris Goudy,* City Attorney, for
defendants.

Before: Beasley, P.J., and J. H. Gillis and R. B.
Martin,* JJ.

J. H. Gillis, J. Defendants appeal as of right a
September 15, 1983, order of the circuit court.
Pursuant to that order, the defendants were re-
strained from setting up an auxiliary police force
in the City of Highland Park.

On June 28, 1982, plaintiff filed a petition with
the Michigan Employment Relations Commission,
seeking arbitration pursuant to the compulsory
arbitration act (CAA), MCL 423.231 *et seq.;* MSA
17.455(31) *et seq.* The previous collective-bargain-

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment.

ing agreement between the parties covering patrol unit employees was to expire on June 30, 1982.

On or about June 24, 1983, the defendant city enacted Ordinance 1109, thereby creating an auxiliary police force to perform such police-related matters as the execution of warrants and court orders involving traffic violations and parking tickets, as well as the issuance of citations for such offenses. Plaintiff alleges that the auxiliary police force was supplied with uniforms and equipment substantially similar to that utilized by the regular sworn police officers employed by the defendant city. Defendant city began using the auxiliary police force on June 27, 1983. Plaintiff contends that as of that date there were and continue to be regular police officers, both active and on lay-off status, available to perform the work assigned to the auxiliary force.

On July 6, 1983, plaintiff filed an unfair labor practice charge with the MERC, alleging a violation of the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* which charge is still pending before the MERC. On the same day, plaintiff filed a complaint for injunctive relief in the circuit court, claiming that the creation of the auxiliary police force contravened the provisions of PERA by interfering with the plaintiff's right to negotiate and bargain collectively with the defendant city. The complaint further alleged that the actions of the defendant city contravened the status quo provision of the CAA, MCL 423.243; MSA 17.455(43). The defendants' answer asserted that the creation of the auxiliary force was a management prerogative retained by the contract and that the action was properly within the scope of powers granted to home rule cities by the Michigan Legislature.

Following a show cause hearing, the trial court

issued an opinion on August 19, 1983, restraining the defendant city from implementing Ordinance 1109. The court concluded that the ordinance was a valid exercise of the defendant city's powers but that, as enacted, it violated the status quo provisions of the CAA. The preliminary restraining order was continued pending a decision on the unfair labor practices grievance filed with the MERC by plaintiff. Defendant city now appeals the lower court's continuance of the preliminary injunction.

Initially, we find that the defendant city did in fact have the power to create an auxiliary police force through the passage of the ordinance in question. The Michigan Constitution grants home rule cities such as Highland Park broad authority over municipal concerns. Const 1963, art 7, § 22. Consistent with the constitution, the home rule act, and specifically MCL 117.4j; MSA 5.2083, provides for the establishment of any department that a city may deem necessary for the general welfare of the city.

The home rule act was intended to confer upon cities exclusive rights in the conduct of their affairs not in conflict with the constitution or general laws, and has therefore been construed liberally. *Conroy v Battle Creek,* 314 Mich 210; 22 NW2d 275 (1946); *People v Sell,* 310 Mich 305; 17 NW2d 193 (1945). The defendant city's creation of an auxiliary police force was clearly reasonable and undertaken for the advancement of the public welfare. The defendant city's actions were therefore consistent with both constitutional and statutory authority. *Tally v Detroit,* 54 Mich App 328; 220 NW2d 778 (1974), *aff'd after rehearing,* 58 Mich App 261; 227 NW2d 214 (1975).

Neither do we find the defendant city's creation of an auxiliary police force contrary to the High-

land Park City Charter. A home rule city may not pass an ordinance which is contrary to its charter. *Thiesen v Dearborn City Council,* 320 Mich 446; 31 NW2d 806 (1948). Further, if the authority to pass an ordinance is not granted by the charter, either expressly or impliedly, such ordinance is void. *Richards v Pontiac,* 305 Mich 666; 9 NW2d 885 (1943); *Inch Memorials v Pontiac,* 93 Mich App 532; 286 NW2d 903 (1979).

The provisions of the Highland Park City Charter broadly grant the city all the power authorized for municipalities by law and specifically incorporate the powers granted under MCL 117.1 *et seq.;* MSA 5.2071 *et seq.* Highland Park Charter, Chapter 3, § 3-1. The city council is vested with the power to enact ordinances not inconsistent with the law to provide for the safety of persons and property. Highland Park Charter, Chapter 5, § 5-1; Chapter 6. Further, the charter authorizes the consolidation or addition of departments if the efficiency and effectiveness of the city would be improved thereby. *Id.,* Chapter 7, § 7-16. We conclude that these provisions of the charter provide sufficient authorization for the defendant city's authority to enact the ordinance in question. As is noted in the ordinance itself, the establishment of an auxiliary police force would augment the number of sworn police officers, thereby meeting the efficiency requirement for the creation of a new department as contained in Chapter 7, § 7-16 of the charter.

Having concluded that the defendant city was armed with the power and authority to enact the ordinance, we next consider whether the ordinance runs afoul of the provisions of either the public employment relations act, MCL 423.201; MSA 17.455(1), or the compulsory arbitration act, MCL 423.231 *et seq.;* MSA 17.455(31). As noted in

the lower court's opinion, the MERC has exclusive jurisdiction over claims of unfair labor practices, MCL 423.216; MSA 17.455(16); *Detroit Bd of Ed v Detroit Federation of Teachers*, 55 Mich App 499, 503; 223 NW2d 23 (1974). Therefore, we cannot determine whether the ordinance violates PERA as such a question must be resolved, in the first instance, by the MERC.

The remaining question, therefore, is whether the ordinance violates the provisions of the CAA, or more specifically, whether the ordinance changes the conditions of employment of the sworn police officers. The pertinent section of the CAA provides:

"During the pendency of proceedings before the arbitration panel, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other but a party may so consent without prejudice to his rights or position under this act." MCL 423.243; MSA 17.455(43).

While there is little guidance in the appellate decisions of this state as to what constitutes a condition of employment under the CAA, there is significant authority addressing this concept as a subject of mandatory bargaining under PERA, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.* Since the CAA complements PERA, we may look to cases defining the subjects of mandatory bargaining to aid in defining the "conditions of employment" as that term is used in the status quo provision of the CAA. *Local 1277, Metropolitan Council No 23, AFSCME, AFL-CIO v Center Line*, 414 Mich 642, 654; 327 NW2d 822 (1982). We may also look to the decisions of the federal courts since, in general, Michigan has adopted the same approach in determining what constitutes a man-

datory subject of bargaining. *Center Line, supra,* p 653.

As an aid in determining what constitutes the "terms and conditions of employment", we look to the three-factor test stated in *Fibreboard Paper Products Corp v National Labor Relations Board,* 379 US 203, 213; 85 S Ct 398; 13 L Ed 2d 233 (1964). The Court in *Fibreboard* stated that the decision to subcontract is a mandatory subject of bargaining, and thus a "term and condition of employment", if: 1) the decision does not alter the employer's basic operation, 2) there is no capital investment or recoupment, and 3) the employer's freedom to manage his business would not be significantly abridged by requiring bargaining. *Fibreboard, supra,* p 213; *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6, 28; 232 NW2d 278 (1975). We agree with the lower court's conclusion that the creation of an auxiliary police force is a "term and condition of employment" under this test. Since the auxiliary force would be under the supervision of the chief of police, no change in the city's basic operation would result. Further, since the lower cost of an auxiliary force was surely the motive behind the passage of the ordinance in question, it obviously cannot be said that a substantial capital investment was involved. Finally, since the ordinance, in reality, did no more than substitute nonunion employees for employees belonging to the plaintiff union, it cannot be said that the city's right to manage its affairs was significantly affected.

We therefore find that the decision to create an auxiliary police force effected a change in the conditions of employment for the plaintiff union's members. Assigning to the auxiliary force duties which would otherwise have been performed by sworn police officers bears heavily on the work

load of union members. Section 13 of the CAA, MCL 423.243; MSA 17.455(43), was thereby violated, and thus the trial court's order restraining the defendants from implementing the ordinance during the pendency of arbitration was properly issued. In conclusion, we note that this result furthers the purpose of the CAA, as set forth at MCL 423.231; MSA 17.455(31):

"It is the public policy of this state that in public police and fire departments, where the right of employees to strike is by law prohibited, it is requisite to the high morale of such employees and the efficient operation of such departments to afford an alternate, expeditious, effective and binding procedure for the resolution of disputes, and to that end the provisions of this act, providing for compulsory arbitration, shall be liberally construed."

Affirmed.