## CITY OF SAULT STE MARIE v FRATERNAL ORDER OF POLICE LABOR COUNCIL, STATE LODGE OF MICHIGAN

Docket No. 91751. Submitted December 11, 1986, at Lansing. Decided September 22, 1987. Leave to appeal applied for.

The City of Sault Ste. Marie and the Fraternal Order of Police Labor Council, State Lodge of Michigan entered into negotiations on a contract to replace the contract which was to expire on June 30, 1983. The contract then in force contained a minimum manning provision which required that certain minimum numbers of sergeants and patrol officers be on duty during various time periods during the day and that at certain times two-man patrols instead of one-man patrols be used. The city sought the elimination or modification of the minimum manning clause. The union rejected the city's proposals to eliminate or modify the minimum manning clause. An impasse on that and other matters resulted and the matter first proceeded to mediation and then proceeded to statutorily mandated arbitration. While arbitration was pending, the city filed a petition with the Michigan Employment Relations Commission, alleging that the union refused to bargain in good faith with respect to the minimum manning clause. The union responded by filing an unfair labor practice charge against the city, alleging that the city had refused to bargain in good faith on certain economic issues. The hearing officer recommended an order which held that the minimum manning provision was not a mandatory subject of bargaining; however, on review, MERC concluded that the minimum manning clause was a mandatory subject of bargaining and thus was a proper subject for the arbitration procedure. The city appealed.

The Court of Appeals *held:*

As a general rule, the issue of manpower or staffing levels is a managerial decision which is therefore a permissive subject of

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 1764 *et seq.*

What constitutes unfair labor practice under state public employee relations acts. 9 ALR4th 20.

Bargainable or negotiable issues in state public employment labor relations. 84 ALR3d 242.

bargaining; however, the issues of employee workload and safety constitute conditions of employment and are mandatory subjects of bargaining. In order for the question of staffing levels to be considered to be a mandatory subject of bargaining which is subject to the statutory arbitration process, there must be some evidence showing that the staffing level affects individual workloads or safety. Since the evidence before MERC was insufficient to reasonably support a conclusion that the workload or safety of the individual police officers was affected by the minimum manning provision, the question of minimum manning levels was not a mandatory subject of bargaining.

Reversed.

M. J. SHAMO, J., dissented and would affirm.

LABOR RELATIONS — PUBLIC EMPLOYMENT — POLICE DEPARTMENTS — MANDATORY SUBJECTS OF BARGAINING.

It is error mandating reversal for the Michigan Employment Relations Commission to hold that a minimum manning provision which sets forth the minimum number of police officers that must be assigned to each shift and to each patrol car is a mandatory subject of bargaining within the meaning of the public employment relations act where there was no evidence tending to show that the number of officers on duty would affect the workload of the individual officers and no evidence from which it could be reasonably inferred that two-man patrols were, in fact, safer than one-man patrols (MCL 423.215; MSA 17.455[15]).

*Clary, Nantz, Wood, Hoffius, Rankin & Cooper* (by *Jack R. Clary* and *John H. Gretzinger*), for petitioner.

*Green, Renner, Weisse, Rettig, Rademacher & Clark, P.C.* (by *Nino E. Green*), for respondent.

Before: MACKENZIE, P.J., and ALLEN and M. J. SHAMO,* JJ.

PER CURIAM. Petitioner city appeals as of right from a decision and order of the Michigan Employment Relations Commission dismissing an unfair

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

labor practice charge filed by the city against respondent union. We reverse.

The union is the exclusive bargaining representative for the city's law enforcement employees, including its sergeants and patrol officers. The collective bargaining agreement effective from July 1, 1980, through June 30, 1983, between the city and the patrol unit contained in § 9.4(6) the following minimum manning clause:

> *Minimum Manning:* The employer agrees to maintain the following minimum manning quotas:
>
> 7:00 AM to 3:00 PM: One (1) Sergeant and two (2) Patrol Officers
>
> 3:00 PM to 9:00 PM: One (1) Sergeant and three (3) Patrol Officers
>
> 9:00 PM to 3:00 AM: One (1) Sergeant and three (3) Patrol Officers
>
> 3:00 AM to 7:00 AM: One (1) Sergeant and two (2) Patrol Officers
>
> The employer further agrees to maintain the following car staffing quotas:
>
> 7:00 AM to 3:00 PM: No restrictions
>
> 3:00 PM to 9:00 PM: No restrictions
>
> 9:00 PM to 3:00 AM: Two (2) two officer cars
>
> 3:00 AM to 7:00 AM: One (1) one officer car and one (1) two officer car.
>
> These quotas are exclusive of detectives; provided, however, it will be permissable [sic] to replace an absent officer with a supervisor or a detective on the 7:00 AM to 3:00 PM shift.
>
> In the event that the Sault Ste. Marie Police Department institutes an organizational change providing for the utilization of Sergeants in the field, the parties agree to re-negotiate the manning section (9.4(6)) to effectively incorporate the use of Sergeants in filling the manning quotas.

Beginning in the spring of 1983, negotiations were conducted between the city and the union

regarding a successor collective bargaining agreement. The city initially offered as one of its proposed changes to the then-existing agreement the elimination of the above minimum manning clause; it later proposed a modified version of the clause. The union rejected both proposals. Impasse was eventually reached on the issue and the question proceeded to mediation and, later, to Act 312 arbitration. MCL 423.321 *et seq.*; MSA 17.455(31) *et seq.*

On April 4, 1984, while arbitration was pending, the city filed its unfair labor practice charge with MERC, alleging that the union had refused to bargain in good faith by bargaining to impasse over the minimum manning clause. The union responded by filing an unfair labor practice charge against the city which alleged that the city had refused to bargain in good faith with the patrol unit and had engaged in sham bargaining, apparently over economic items. The cases, along with a third charge not relevant to this appeal, were consolidated for hearing. On March 24, 1986, MERC issued a decision and order which, contrary to the decision and recommended order of the hearing officer presiding at the hearing, concluded that the minimum manning clause was premised on officer safety and therefore constituted a mandatory subject of bargaining which could be submitted to Act 312 arbitration. MERC ordered dismissal of the charges, implicitly determining that an Act 312 arbitration panel had the authorization to make an award regarding minimum manning.

MERC has exclusive jurisdiction over claims of unfair labor practices pursuant to MCL 423.216; MSA 17.455(16). *Michigan Law Enforcement Union, Teamsters Local 129 v Highland Park,* 138 Mich App 342, 348; 360 NW2d 611 (1984), rev'd on other grounds 422 Mich 945 (1985). Section 106 of

the Administrative Procedures Act, MCL 24.306; MSA 3.560(206), dictates the appellate scope of review for agency decisions. *Ron's Last Chance, Inc v Liquor Control Comm,* 124 Mich App 179, 181; 333 NW2d 502 (1983). Section 106 provides:

> (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:
>
> *   *   *
>
> (d) Not supported by competent, material, and substantial evidence on the whole record.
>
> *   *   *
>
> (f) Affected by other substantial and material error of law.
> (2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings.

MERC's findings of fact regarding an unfair labor practice, if supported by competent, material, and substantial evidence when reviewing the record as a whole, shall be conclusive. MCL 423.216; MSA 17.455(16). Substantial evidence is defined as more than a scintilla, but substantially less than a preponderance of the evidence. *Tocco v Marquette Prison Warden,* 123 Mich App 395; 333 NW2d 295 (1983); *Ron's Last Chance, supra* at 182. This Court may review the law regardless of the factual findings of the commission. *Mid-Michigan Education Ass'n (MEA-NEA) v St Charles Community Schools,* 150 Mich App 763; 389 NW2d 482 (1986).

Act 312, which provides for compulsory arbitration in police and fire disputes, is intended to supplement the public employee relations act (PERA), MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*

See MCL 423.244; MSA 17.455(44); *Local 1277, Metropolitan Council No 23, AFSCME, AFL-CIO v Center Line,* 414 Mich 642, 652; 327 NW2d 822 (1982). Under § 15 of PERA, to bargain collectively "is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to *wages, hours, and other terms and conditions of employment."* (Emphasis added.) MCL 423.215; MSA 17.455(15). Those issues that fall into the category of "wages, hours and other terms and conditions of employment" are deemed to be mandatory subjects of bargaining. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 54-57; 214 NW2d 803 (1974). In contrast, permissive subjects of bargaining are those subjects that fall outside the scope of those designated as mandatory subjects. *Center Line, supra,* p 652. It is only with respect to mandatory subjects that there is a duty to bargain under § 15 of PERA. *Id.* at 653. Moreover, an Act 312 arbitration panel has the authority to compel agreement only as to mandatory subjects. *Id.* at 654.

As a general rule, the issue of manpower or staffing levels is a managerial decision and therefore a permissive subject of bargaining. See, e.g., *Center Line, supra.* The issues of employee workload and safety, however, constitute conditions of employment and hence are mandatory subjects of bargaining. *Alpena v Alpena Fire Fighters Ass'n,* 56 Mich App 568, 575; 224 NW2d 672 (1974), and cases cited therein; *Gallenkamp Stores Co v National Labor Relations Bd,* 402 F2d 525, 529, n 4 (CA 9, 1968). In this case, the city argues that the evidence before MERC shows that the manning clause operates as a staffing requirement and, as such, is a permissive subject of bargaining outside the scope of Act 312 compulsory arbitration. The

union, on the other hand, contends that the manning clause involves employee workload and safety and, accordingly, falls within the scope of negotiation and arbitration.

The reconciliation of two similar positions was addressed by our Supreme Court in *Center Line, supra.* There, the Court noted that, while manpower issues are not mandatory subjects of bargaining and therefore cannot be compelled in an arbitration award, there is a duty to bargain over the impact of manpower decisions to the extent that they relate to workload and safety. Citing *Fire Fighters Union, Local 1186 v Vallejo,* 12 Cal 3d 608; 116 Cal Rptr 507; 526 P2d 971 (1974), *Alpena Fire Fighters, supra,* and *Narragansett v International Ass'n of Fire Fighters, AFL-CIO, Local 1589,* 119 RI 506; 380 A2d 521 (1977), the Court in *Center Line* further indicated that, in order to come within the subject matter and jurisdiction of an Act 312 arbitration panel, the position that manpower affects safety must be supported by some evidence. 414 Mich 662-663.

In this case, we cannot find support in the record for MERC's conclusion that the disputed minimum manning clause constitutes a workload or safety practice to which the duty to bargain and submit to Act 312 arbitration attaches. The record before us reveals that no evidence was before MERC showing or tending to show that the number of police officers on duty affects the workload of each officer. Further, other than a San Diego study finding that officers assigned to two-man patrols *perceive* them to be safer than one-man patrols, no evidence was before MERC showing that two-man patrols enhance officer safety. Indeed, the evidence (including the San Diego study, state data on frequency of assault on officers, and local data on

injuries sustained by Sault Ste. Marie police offi-
cers) strongly suggests that officers assigned to
two-man units are in *greater* danger of suffering
an assault while on duty. Because there was a
dearth of evidence before MERC which proved, or
from which a reasonable inference could be drawn,
that staffing levels affect employee workload and
safety, we must conclude that the manning clause
at issue here does not constitute a mandatory
subject of bargaining and therefore is outside the
scope of Act 312 arbitration. Accordingly, we re-
verse the MERC decision.

Reversed.

M. J. SHAMO, J., dissents and would affirm.