**TOLEDO POLICE PATROLMAN'S ASSOCIATION, LOCAL 10, IUPA, AFL–CIO–CLC, Appellees,**

v.

**CITY OF TOLEDO et al., Appellants.**

[Cite as *Toledo Police Patrolman's Assn., Local 10, IUPA, AFL–CIO–CLC v. Toledo* (1998), 127 Ohio App.3d 450.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–97–1392.

Decided June 26, 1998.

*Ted Iorio* and *Christine Reardon,* for appellees.

*James G. Burkhardt,* for appellants.

MELVIN L. RESNICK, Judge.

Appellants, Carleton S. Finkbeiner, Mayor of the city of Toledo, the Toledo Police Department, and Gerald Galvin, Director of the Toledo Police Department, also known as Police Chief Galvin ("city"), come before the court appealing a judgment of the Lucas County Court of Common Pleas. In its judgment, the trial court declared that the grievance filed by appellee, the Toledo Police Patrolman's Association, Local 10, IUPA, AFL–CIO–CLC ("TPPA"), was subject to arbitration pursuant to the collective bargaining agreement between the city and the TPPA. The court also issued a preliminary and permanent injunction enjoining the city from implementing a proposed plan to use, on the day shift, one-officer police patrol vehicles throughout the city of Toledo.

The city appeals that judgment and asserts that the following errors occurred in the trial court proceedings:

"The court erred in finding that the appellee's claim was a grievance under the terms of the contract, and that therefore the court had jurisdiction.

"The court erred in finding that the appellee's claim was a grievance under the terms of the contract, and that therefore the dispute was subject to arbitration.

"The court erred in granting the injunction enjoining its proposed expansion of one-officer patrol units prior to arbitration of the grievance."

TPPA is the exclusive representative of certain members of the Toledo Police Department for the purpose of negotiating and entering into a collective bargaining agreement with a public employer, in this case, the city of Toledo. On January 1, 1997, the TPPA and the city entered into a such an agreement, codified as Toledo Municipal Code Chapter 2129.[1]

As of January 1997, the city of Toledo was patrolled by a combination of one-officer and two-officer patrol vehicles. The one-officer patrol vehicles were used only on the day shift and were not assigned to high crime areas or utilized at times of peak citizen demand. The one-officer patrol units were first instituted in 1972 as part of a voluntary pilot program rather than by a general order of the Toledo Police Department.

In January 1997, the TPPA learned that, pursuant to the order of Police Chief Galvin, the city would implement a decision to employ one-officer patrol vehicles for all units on the day shift, commencing on March 1, 1997.

On January 14, 1997, the president of the TPPA, D. Michael Collins, wrote a letter to Police Chief Galvin expressing the TPPA's concerns with regard to police safety, public safety, and efficiency in using only one-officer patrol units on the day shift. Collins supported his belief with statistical data. Collins sent a second letter to the chief at the end of January, again expressing concerns related to safety and efficiency. In support of his position, Collins offered two internal memoranda from the planning and research section of the Toledo Police Department, indicating safety and efficiency problems encountered with the use of only one-officer patrol units.

On February 24, 1997, the TPPA filed a class action grievance, alleging that the decision to use one-officer patrol units on the day shift violated several provisions of the collective bargaining agreement, as well as the bargaining agreement as a whole. The TPPA requested expedited arbitration of the grievance. In addition, the letter notifying the city of the TPPA's grievance contained a paragraph demanding that the city "bargain over all aspects of one person patrol units, including the fundamental decision of whether such system may be implemented in the first instance." The letter indicated that failure to contact the TPPA for the purpose of scheduling a bargaining session would be considered a refusal to bargain and that the failure to vacate the implementation date would be viewed as a refusal to bargain in good faith.

On February 25, 1997, Chief Galvin rejected expedited arbitration. The TPPA then informed the city that it would file a complaint in the common pleas court

---

1. As of the writing of this opinion, Toledo City Council had not issued the ordinance; therefore, throughout this opinion the various provisions of the collective bargaining agreement shall be denoted as "Section 2129.___."

and request a temporary restraining order enjoining the city from implementing its patrol vehicle plan on March 1, 1997. Chief Galvin responded by agreeing to postpone the date of implementation and to provide Toledo City Council with the data regarding one-officer patrol units. In June 1997, Chief Galvin informed the TPPA that the one-officer patrol units on the day shift would be implemented on July 1, 1997.

On June 27, 1997, the TPPA filed a complaint asking the common pleas court to issue a temporary restraining order enjoining the city from instituting one-officer patrol units until the issue was arbitrated under the procedure set forth in the collective bargaining agreement. The TPPA further asked the court to (1) declare that the TPPA and its members would suffer irreparable harm as a result of the city's enforcement of one-officer patrol units, (2) declare that the city had violated Toledo Municipal Code Section 2129.14 by refusing to arbitrate the grievance related to the implementation of one-officer patrol units, (3) issue a preliminary and permanent injunction restraining the city and any of its employees from refusing to arbitrate any grievance related to the case at bar, (4) order the city to arbitrate any grievance related to this matter, and (5) award the TPPA costs and attorney fees.

The trial court granted the TPPA's request for a preliminary restraining order. The restraining order was later extended pending the outcome of this case.

In its answer and memorandum in opposition to the TPPA's motion for injunctive relief, the city argued that the TPPA's grievance was not subject to arbitration because it was based on a refusal to bargain. Asserting that a refusal to bargain is an unfair labor practice, the city maintained that the State Employment Relations Board ("SERB") had exclusive jurisdiction over the TPPA's claim. The city also insisted that the TPPA failed to meet the requirements, as set forth in *Boys Markets v. Retail Clerks Union* (1970), 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, and *Aluminum Workers Internatl. v. Consol. Aluminum Corp.* (C.A.6, 1982), 696 F.2d 437, for injunctive relief or an order compelling arbitration. Additionally, the city contended that Chief Galvin retained the right, as reserved in the collective bargaining agreement and pursuant to the Toledo City Charter, to control "stationing and transfer of all patrolmen." The city asserted that an "injunction will not lie to restrain" the chief in exercising that control.

After a trial to the bench, the common pleas court entered judgment in favor of the TPPA. Based on the evidence before her, the trial judge determined that the grievance filed by the TPPA was not solely based on a refusal to bargain. Rather, she concluded that the grievance alleged several breaches of the collective bargaining agreement and that, therefore, the common pleas court had the jurisdiction to consider the relief requested by the TPPA.

The court next analyzed the TPPA's request for injunctive relief under the standard enunciated in *Aluminum Workers* and its progeny and the equitable bases for injunctive relief. The court decided that "the TPPA and its members are without an adequate remedy at law and will suffer immediate and irreparable harm, injury and damage unless the permanent injunction [enjoining implementation of the one-officer patrol units prior to the arbitration of the TPPA's grievance] is granted."

Finally, the common pleas court determined the arbitrability of the TPPA's grievance. The trial judge rejected the city's argument that implementing the one-officer patrol unit plan was a matter within Chief Galvin's management prerogative. The court then held that the grievance as it related to the following agreement provisions was arbitrable: (1) safety issues under Section 2129.88; (2) breach of Section 2129.01, the "Recognition Clause," in that the implementation of the one officer patrol unit plan arguably "affects a term and condition of employment"; and (3) breach of the collective bargaining agreement as a whole.

■ The city's first assignment of error contends that the TPPA grievance asserts a "refusal to bargain," thereby bringing the union's claim within the exclusive jurisdiction of SERB.

R.C. 4117.08(A) requires a public employer to bargain with the exclusive representative of a particular group of public employees with regard to "[a]ll matters pertaining to wages, hours, or terms and other conditions of employment * * *." A public employer's refusal to bargain collectively with the exclusive representative is an unfair labor practice. R.C. 4117.11(A)(5). Pursuant to R.C. 4117.12(A), SERB has exclusive jurisdiction (1) to resolve claims committed to it under R.C. 4117.11 as unfair labor practices and (2) where a complaint filed in a common pleas court alleges conduct specifically enumerated in R.C. 4117.11 and is dismissed by a trial court for lack of subject-matter jurisdiction. See *E. Cleveland v. E. Cleveland Firefighters Local 500* (1994), 70 Ohio St.3d 125, 127–128, 637 N.E.2d 878, 879–881.

One of the paragraphs in the TPPA's February 24, 1997 letter to Chief Galvin discusses the city's refusal to bargain the issue of one-officer patrol units. This is undisputedly a claim addressing an unfair labor practice within the purview of R.C. 4117.11(A)(5). Therefore, SERB has exclusive jurisdiction over this claim.

Nevertheless, the last paragraph of Collins's letter discusses the grievance instituted by the TPPA and the specific provisions of the collective bargaining agreement allegedly violated by the city's decision to implement the one-officer patrol unit plan. The city rejected the premise that any provision of the collective bargaining agreement was violated, thereby raising the issue of whether TPPA's grievance was arbitrable. TPPA's complaint, brought pursuant to

R.C. Chapter 2711, the Ohio Arbitration Act, is based on this issue, *i.e.*, arbitrability, rather than on a refusal to collectively bargain.

■ Arbitrability of a specific grievance is, in the absence of an agreement to submit the issue to an arbitrator, a question for a court to decide. *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–1419, 89 L.Ed.2d 648, 655–656; *Ohio Patrolmen's Benevolent Assn. v. Lordstown* (1997), 118 Ohio App.3d 9, 11, 691 N.E.2d 1069, 1070; *Internl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union 20 v. Toledo* (1988), 48 Ohio App.3d 11, 13, 548 N.E.2d 257, 259–260. We are of the opinion that simply because TPPA's grievance was included in a letter alleging an arguable, or even an undisputed unfair labor practice, does not deprive the trial court of its jurisdiction to determine this arbitrability. See *E. Cleveland v. E. Cleveland Firefighters Local 500*, 70 Ohio St.3d at 128, 637 N.E.2d at 880–881. Thus, we find that the issue of the arbitrability of TPPA's grievance as presented to the trial court falls outside the parameters of R.C. 4117.11, and the common pleas court possessed the jurisdiction to determine that issue. See *Patrolmen's Benevolent Assn. v. MetroHealth Sys.* (1993), 87 Ohio App.3d 16, 621 N.E.2d 833. Accordingly, the city's first assignment of error is found not well taken.

■ The city's second assignment of error maintains that the trial court erred in determining that the TPPA has an arbitrable grievance.

, ■ Arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417. Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that it should apply "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* at 582–583, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417–1418. In the absence of any express provision excluding a particular grievance from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* The burden is on the party contesting arbitrability to demonstrate that the language in the collective bargaining agreement excludes a dispute from arbitration. *Phoenix Newspapers v. Phoenix Mailers Union Local 752* (C.A.9, 1993), 989 F.2d 1077, 1080.

■ The question of arbitrability is ordinarily for the court, but once arbitration is found to be applicable, the court should not address the merits of the grievance. *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. at 649, 106 S.Ct. at 1418–1419, 89 L.Ed.2d at 655–656; *Council of Smaller Enter-*

*prises v. Gates, McDonald & Co.* (1998), 80 Ohio St.3d 661, 666, 687 N.E.2d 1352, 1355–1356.

Section 2129.14 of the city–TPPA collective bargaining agreement defines a "grievance" as "any dispute or difference that arises between the City and Association [TPPA] as to the interpretation or application of any provisions of this agreement." Section 2921.14 further provides that the grievance must "be settled in accordance with the grievance procedure set forth." This is a typically broad arbitration clause and strengthens the presumption favoring arbitrability. *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656–657.

Nonetheless, the city directs our attention to Section 2129.14(d) of the collective bargaining agreement, which states that "arbitration shall be limited to matters concerning the interpretation or application of provisions listed herein." The city argues that no specific provision of the collective bargaining agreement refers to the assignment of patrol officers; therefore, the decision to implement one-officer patrol units was a management right and not a contract issue.

In *Mayor & City Council of Baltimore v. Baltimore Fire Fighters, Local 734, I.A.F.F.* (1992), 93 Md.App. 604, 613 A.2d 1023, the court was required to determine, among other things, whether the reduction of staffing from four to three firefighters on fire engines was arbitrable pursuant to the grievance procedure in the parties' collective bargaining agreement. *Id.,* 93 Md.App. at 607, 613 A.2d at 1024. The mayor and city council asserted that no specific provision in the agreement involved staff reduction. The Maryland appellate court, in disposing of this assertion, determined that the lack of a specific clause covering staff reduction "does not mean a dispute as to that benefit is not a 'grievance.'" *Id.,* 93 Md.App. at 612, 613 A.2d at 1027. Rather, the court found that a dispute is a grievance unless it can be shown with positive assurance that the dispute does not concern the application or interpretation of any of the terms of the collective bargaining agreement. *Id.,* citing *AT&T Technologies,* 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656–657. The Maryland appellate court agreed with the trial court in finding that two provisions of the agreement, one involving payment of overtime and the other safety, concerned interpretation and application of the collective bargaining agreement and, therefore, dispute over staffing reductions was arbitrable. *Id.* See, also, *Phoenix Newspapers v. Phoenix Mailers Union Local 752,* 989 F.2d at 1080 (fact that agreement failed to include provision related to "manning [of machinery] changes" is not forceful evidence sufficient to override presumption of arbitrability derived from broad arbitration clause).

Like the court in *Baltimore Fire Fighters,* the common pleas court found that certain provisions, as well as the agreement as a whole, required application and

interpretation in order to resolve the dispute between the city and the TPPA. Because we conclude, as discussed below, that the trial court was correct, in part, the lack of a provision referring specifically to the assignment of patrol officers does not affect the arbitrability of the dispute in the instant case.

■ We turn now to the city's argument concerning Section 2129.99 of the collective bargaining agreement. That section is titled "Administrative Responsibility" and reads:

"Except as otherwise provided herein, the City shall retain all rights and duties pursuant to the Charter of the City to operate and direct the Division of Police."

Toledo City Charter, Section 140, states that the police chief "shall have exclusive control of the stationing and transfer of all patrolmen * * *." The city contends that Section 2129.99, the "reserved management rights" clause, when coupled with the Toledo City Charter, Section 140, grants Chief Galvin the management prerogative to reassign police officers to patrol units. Therefore, the city claims that the implementation of one-officer patrol units is a matter outside the collective bargaining agreement.

The city offers three cases to support its claim. *Harsney v. Allen* (1953), 160 Ohio St. 36, 50 O.O. 492, 113 N.E.2d 86; *Boston v. Boston Police Patrolmen's Assn., Inc.* (1989), 403 Mass. 680, 532 N.E.2d 640; *Sault Ste. Marie v. Fraternal Order of Police Labor Council, State Lodge of Michigan* (1987), 163 Mich.App. 350, 414 N.W.2d 168.

As aptly noted by the common pleas court, *Harsney*, the only case possibly setting precedent for this court, was decided prior to the enactment of the Ohio Public Employees' Collective Bargaining Act, R.C. Chapter 4117, effective April 1, 1984. Thus, *Harsney* does not address the interplay between a police chief's management prerogative and the interpretation of a reserved rights clause of a collective bargaining agreement. On this basis alone, *Harsney* is distinguishable from the case at bar.

We agree with the trial court in finding that *Boston Police Patrolmen's Assn.* is a "multilayered" decision. The aspect of the case related to the one before us involved the appeal of an order vacating an arbitrator's award on the ground that it was beyond the scope of the arbitrator's authority. *Boston Police Patrolmen's Assn.*, 403 Mass. at 684, 532 N.E.2d at 642.

The arbitrator decided that a proposal to assign one police officer, instead of two, to a marked vehicle violated the applicable bargaining agreement. *Id.* In finding that the assignment of officers was a subject beyond public sector collective bargaining, the Massachusetts Supreme Court relied on a statute expressly granting the police commissioner extremely broad powers, three older Massachusetts cases, and a provision of the Massachusetts Public Employees

Collective Bargaining Act. *Id.* A review of these cases and a perusal of the law relied on in reaching those decisions lead this court to believe that the statutory framework used in Massachusetts for establishing police departments and the duties of a police chief are sufficiently different from that of Ohio as to render these cases inapplicable to the case under consideration. Cf., *e.g.*, R.C. 737.05 with G.L. c. 41, Sections 97 and 97A. See, also, *Chief of Police v. Westford* (1974), 365 Mass. 526, 313 N.E.2d 443.

Moreover, the statute relied on in *Boston Police Patrolmen's Assn.* grants the police commissioner far greater powers than Toledo Municipal Charter Section 140 grants to Toledo's Police Chief. These include the power to "appoint, establish and organize" the police of the city of Boston, as well as the authority to control "government, administration, disposition and discipline of the department" and to make "all needful rules and regulations for the efficiency of said police." *Id.*, 403 Mass. at 684, 532 N.E.2d at 642. For these reasons, we find the law set forth in *Boston Police Patrolmen's Assn.* unpersuasive.

With regard to *Sault Ste. Marie v. Fraternal Order of Police Labor Council, State Lodge,* the issue of minimum manning of police sergeants in the field came before the court as an appeal from a decision of Michigan Employment Relations Commission. *Sault Ste. Marie v. Fraternal Order of Police Labor Council, State Lodge,* 163 Mich.App. at 351–352, 414 N.W.2d at 168. The question raised in the unfair labor practices claim was whether an arbitration panel had the authority to determine whether the parties were required to bargain and negotiate the minimum manning issue. *Id.*, 163 Mich.App. at 356–356, 414 N.W.2d at 170. Only mandatory subjects of collective bargaining are subject to this type of compulsory arbitration. *Id.* The employment relations commission took evidence and determined that minimum manning was a subject of mandatory collective bargaining under the collective bargaining statute because the workload and safety of the officers were involved. *Id.*, 163 Mich.App. at 353, 414 N.W.2d at 169. Based on that evidence, the commission found that the question of minimum manning was subject to arbitration. *Id.*

On appeal, the appellate court applied a standard of review consisting of determining whether the commission's decision was "supported by competent, material, and substantial evidence" on the whole record. *Id.*, 163 Mich.App. at 354, 414 N.W.2d at 169–170. Using this standard, the court reversed the commission's decision, finding a "dearth of evidence" to support the connection between minimum manning and officer workload and safety. *Id.*, 163 Mich.App. at 356, 414 N.W.2d at 170–171. In doing so, the court noted that, as a general rule, the issue of manpower or staffing is a management decision subject only to permissive bargaining. *Id.*, 163 Mich.App. at 355, 414 N.W.2d at 170.

This review of *Sault Ste. Marie v. Fraternal Order of Police Labor Council, State Lodge,* reveals that the context in which management prerogative was mentioned was totally different from that in the case under consideration. The provisions of a collective bargaining agreement were not involved in the Michigan case, the court applied a standard requiring substantial evidence, and the ultimate issue, a duty to bargain, was different from the determination of arbitrability confronted by the Lucas County Common Pleas Court. Thus, we conclude that *Sault Ste. Marie v. Fraternal Order of Police Labor Council, State Lodge,* offers little or no support to the city's claim.

In sum, and as did the trial court in this case, we again refer to *Baltimore Fire Fighters,* 93 Md.App. at 621–623, 613 A.2d at 1032 (and the cases cited therein), for the proposition that the staffing of particular equipment within a police or fire department is not so "inextricably intertwined" with management rights as to preclude its arbitration pursuant to a collective bargaining agreement that includes matters of importance to public employees.[2] Accordingly, the city's arguments on this issue are without merit.

The city also challenges the trial court's conclusions of law, finding that violations of the "whole agreement," Sections 2129.88 and 2129.89, and Section 2129.01 are arbitrable.

■ The common pleas court determined that "the city's attempt to implement the expanded one officer unit outside the agreement, and in a manner which would place the members of the TPPA [in] jeopardy, establish that the city has committed a fundamental repudiation of the Agreement."[3] As support for the assertion that arbitrable issues are limited to alleged violations of specific provisions of the collective bargaining agreement, the city refers this court to Section 2129.14(d). This section, as quoted previously, mandates that arbitration is limited "to matters concerning the interpretation or application of provisions listed herein."

■ "Terms in a collective bargaining agreement shall be given their ordinary meaning in the absence of evidence indicating that the parties to the contract intended to expand or otherwise deviate from that meaning." *Detroit Coil v.*

---

2. We are of the opinion that the city's assertion of a management right or prerogative brought the interpretation and application of Section 2129.99 into question. However, the TPPA did not assert that a claim based on this section was arbitrable, and the issue was not directly considered by the common pleas court. We shall therefore refrain from addressing the arbitrability of such a claim.

3. In our opinion, the court was actually finding that the application/interpretation of Section 2129.99 was needed to determine the management-right issue. Consequently, the court was really holding that the one-officer unit plan vis-a-vis this section was arbitrable.

*Internatl. Assn. of Machinists & Aerospace Workers, Lodge No. 82* (C.A.6, 1979), 594 F.2d 575, 580. Merriam Webster's Collegiate Dictionary (10 Ed.1996) 680, defines the noun "list" as "the total number to be considered or included." The verb "list" means "to include on a list." *Id.* Thus, pursuant to Section 2129.14(d), arbitrable matters are limited to the provisions included in the collective bargaining agreement. A reading of the entire agreement fails to reveal a provision that brings an alleged violation of the "whole agreement" within the ambit of the arbitration clause. What is apparent, and as observed by the trial court, is that interpretation and application of specific sections of the agreement are involved. These are, as determined by the trial court, Section 2129.01 (the Recognition Clause) and Sections 2129.88 and 2129.89 (related to safety). Thus, the city provided forceful evidence of a purpose to exclude a claim of a violation of the whole agreement from arbitration. The court erred in determining that this matter was arbitrable.

Section 2129.01 is the so-called "Recognition Clause" of the collective bargaining agreement and reads, in part:

"The City agrees to recognize the Toledo Police Patrolman's Association, Local 10, * * * as having jurisdiction over and being the sole exclusive bargaining agent for employees of the City * * * for the purpose of establishing wages, hours of work, other terms and conditions of employment, and handling of grievances."

The trial court found that Section 2129.01 addresses hours and conditions of employment. Therefore, the court concluded that, because it could not be said with positive assurance that the implementation of one-officer patrol units did not concern Section 2129.01, it was a grievance subject to arbitration.

The city contends that Section 2129.01 merely recognizes the TPPA as the sole and exclusive bargaining agent for patrol officers. Therefore, the city reasons that in order to be considered a grievance, the TPPA was required to allege that the city recognized or bargained with some other employee group on the issue of one-officer patrol units. The city also argues that if that issue does affect a term and condition of employment, it is for SERB to determine whether a breach of duty to bargain has occurred. We disagree.

The city's unilateral decision to expand the use of one-man patrol units based on the police chief's reserved management rights arguably abrogates the *recognition of the TPPA* as having sole jurisdiction to bargain over such working conditions as the safety of patrol officers. Further, that decision again brings into play Section 2129.99 as it relates to that recognition.

Finally, the city contends that the safety provisions of the collective bargaining agreement are specifically excluded from arbitration. The city claims

that Section 2129.88 requires the TPPA to bring any safety concerns related to a patrol officer's duties to the Police Division Safety Committee for its consideration. Because Section 2129.88 expressly provides that recommendations of the safety committee are not subject to arbitration, the city concludes that this section expressly excludes the TPPA's grievance from arbitration. The city also claims that the TPPA abrogated the arbitral process by not submitting its concerns to the safety committee.

Initially, we find that the trial court determined that the implementation of one-officer patrol units plan required application of Section 2129.88. That is, the court never determined whether, or held that, Section 2129.89 was implicated in this case. Therefore, we shall consider only that provision that is the subject of the court's ruling.

Section 2129.88 is titled "Safety and Welfare." The first paragraph of that section reads: "The City shall make reasonable provisions for the safety, health and welfare of its employees. Protective devices as required by law to properly protect officers from injury shall be provided by the City." The next paragraph of this section provides for TPPA representation on the Police Division Safety Committee. The last paragraph states than any recommendations of the safety committee that are not approved and implemented by the city to the satisfaction of a majority of the safety committee are subject to the grievance procedure only to the third step. Section 2129.14(d) provides for arbitration, the fourth step in the procedure.

In giving the terms of this provision of the collective bargaining agreement its ordinary meaning, we must agree with the common pleas court. The first paragraph of Section 2129.88 sets forth the duty of the city to provide for the safety of the patrol officers. There is nothing in the remaining paragraphs of this provision even to suggest that all safety concerns must be submitted to the safety committee. Consequently, the last two paragraphs of Section 2129.88 are not relevant to this case.

Nevertheless, the city asks us to consider the testimony offered by Deputy Chief Michael Navarre, in which he stated that there is no limit to the issues that come before the safety committee. Navarre also testified that the issue of safety as it relates to one-man patrol units was never submitted to the safety committee; therefore, no recommendation was ever made to or rejected by the city. Even if we consider this evidence, it is not the "most forceful evidence of as purpose to exclude" safety concerns from arbitration, as set forth in the first paragraph of Section 2129.88.

In this assignment of error, the city also complains, in essence, that the common pleas court abused its discretion in accepting evidence of the fact that the city might have considered the initial institution of one-officer patrol units a

grievable issue and setting forth this evidence as Findings of Fact Nos. 9 and 10. While we may agree that this evidence, as well as the findings of fact reflecting this evidence, has little relevance to the current dispute, the trial court did not base its determination of the arbitrability of the safety question on this evidence. Rather, in her opinion, the judge relied on safety studies, testimony, a report, and a survey to determine that implementation of the one-officer patrol units involved an alleged violation of Section 2129.88, and was therefore, arbitrable. The city thus fails to demonstrate how the inclusion of Findings of Fact Nos. 9 and 10 prejudiced its case.

For the foregoing reasons, we find that the trial court did not err in finding that the TPPA's claim was arbitrable. Accordingly, the city's second assignment of error is found well taken in part and not well taken in part.

 In its third assignment of error, the city asserts that the common pleas court abused its discretion in granting the TPPA's request for an injunction. Upon a thorough review of the city's arguments and the relevant case and statutory law, we conclude that the Honorable Ruth A. Franks applied the appropriate law and facts to reach her decision on this issue, and, as a result, did not abuse her discretion. Additionally, we hereby adopt Part C of her opinion, dealing with the request for injunctive relief, as our own. See Appendix A. The city's third assignment of error is found not well taken.

The judgment of the Lucas County Court of Common Pleas is affirmed in all respects excepting the finding as to the arbitrability of a claim that the whole collective bargaining agreement was violated. That portion of the judgment is reversed. This cause is remanded to the trial court for further proceedings consistent with this judgment. The city is ordered to pay the costs of this appeal.

*Judgment affirmed in part*
*and reversed in part.*

GLASSER and SHERCK, JJ., concur.

## APPENDIX A

RUTH A. FRANKS, Judge.

### C. *REQUEST FOR INJUNCTIVE RELIEF*

In its verified complaint, TPPA requests, in relevant part:

"B. That this Court enter a preliminary and permanent injunction enjoining the Defendants or any agent thereof from implementing any expansion of one

person patrol units within the City of Toledo prior to the resolution of the Plaintiff's February 24, 1997 grievance by an arbitrator;

" * *

"E. That this Court enter a preliminary and permanent injunction restraining the Defendant City of Toledo, its employees or agents, from refusing to arbitrate the TPPA's February 24, 1997 grievance relevant to the implementation of one person patrol units, or any other grievances which may be filed relevant to the dispute at bar."

The principles governing when an injunction may be issued to preserve the *status quo* pending arbitration were first set forth in *Boys Markets, Inc. v. Retail Clerks Union* (1970), 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199, and *Buffalo Forge Co. v. United Steelworkers of Am., AFL–CIO* (1976), 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022. *Boys Markets* held that where a grievance is subject to arbitration under a collective bargaining agreement, and violations of a "no-strike" clause are causing an employer irreparable injury, a court may grant injunctive relief. *Id.* at syllabus. A "reverse" *Boys Markets* injunction (*i.e.,* where the injunction is obtained by the union opposed to the employer) was first recognized in *Aluminum Workers Internatl. v. Consol. Aluminum Corp.* (C.A.6, 1982), 696 F.2d 437.

There are four prerequisites the court must find before it enjoins the city:

(1) the controversy must involve or grow out a labor dispute within the meaning of Section 4 of the Norris–LaGuardia Act;

(2) a full evidentiary hearing must be held;

(3) the court must find that the dispute underlying the controversy is subject to binding arbitration under the terms of the agreement; and

(4) the traditional equitable bases for injunctive relief must be met. *Internatl. Union United Auto. Workers v. Lester Eng. Co.* (C.A.6, 1983), 718 F.2d 818.

The court will address each requirement as it appears above.

### 1. *Labor Dispute*

Section 4 of the Norris–LaGuardia Act prohibits the issuance of a restraining order or injunction "in any case involving or growing out of any labor dispute" (Section 104, Title 29, U.S.Code) * * *. *Lester Engineering* at 823. Section 13 of the Act defines "labor dispute" as "any controversy concerning terms or conditions of employment." Section 113(c), Title 29, U.S. Code. The "labor dispute" requirement is satisfied "where an employer and a union representing its employees are the disputants, and their dispute concerns the interpre-

tation of the collective bargaining agreement that defines their relationship." *Lester Eng.* at 823, citing *Jacksonville Bulk Terminals v. Internatl. Longshoremen's Assn.* (1982), 457 U.S. 702, 713, 102 S.Ct. 2672, 2680–2681, 73 L.Ed.2d 327, 337.

In the present action, the employer, the city, and the union, the TPPA, are the disputants and the dispute concerns the interpretation of several provisions in the agreement. The agreement defines the parties' relationship and states that its purpose is the "promotion of harmonious relations between the City and the Police Personnel" and to establish procedures for the resolution of differences, wages, hours, and other terms and conditions of employment. As such, the action is a "labor dispute" within the meaning of the Norris–LaGuardia Act and meets the first prerequisite for status quo injunction.

## 2. *Evidentiary Hearing*

Pursuant to Civ.R. 65(B)(2), the matter was consolidated for trial on the merits and proceeded to trial on August 22, 1997. Clearly, the requirement that the court conduct a full evidentiary hearing was satisfied by the August 22, 1997 trial proceeding.

## 3. *Arbitrability*

Arbitration is, unquestionably, the preferred method of dispute resolution. *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, at 650, 106 S.Ct. 1415, at 1419, 89 L.Ed.2d 648, at 656–657; *Schaefer v. Allstate Ins. Co.* (1992), 63 Ohio St.3d 708, 711, 590 N.E.2d 1242, 1244–1245. As such, arbitration is required " 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " 475 U.S. at 653, 106 S.Ct. at 1421, 89 L.Ed.2d at 659, quoting *Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417–1418. Arbitration is favored because it is a relatively expeditious and economical way to resolve a dispute and has the added advantage of unburdening crowded court dockets. *Schaefer*, 63 Ohio St.3d at 712, 590 N.E.2d at 1245–1246.

The "mission statement" of the agreement between the city and the TPPA states:

"The City of Toledo has entered into this Agreement with the Toledo Police Patrolman's Association, Local 10, which has as its purpose the promotion of harmonious relations between the City and the Police Personnel in the classifications herein; the establishment of an equitable and peaceful procedure for the resolution of differences; and the establishment of rate of pay, hours of work, and terms and other conditions of employment."

The agreement contains a broad grievance arbitration clause which provides, in part:

### "2129.14 Grievance Procedure

"The definition of a grievance shall be any dispute or difference that arises between the City and the Association as to the interpretation or application of any provisions of this agreement. Such dispute or difference (hereinafter referred to as 'grievance') shall be settled in accordance with the grievance procedure set forth."

The *AT&T* court acknowledged that the presumption of arbitrability is particularly applicable in the case of a broad arbitration clause. *AT&T*, 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656–657. The *AT&T* clause, similar to the one in the instant action, provided for the arbitration of " 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder * * *.' " The court determined:

"In such cases, '[i]n the absence of an express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " *Id.*, quoting *Warrior & Gulf*, 363 U.S. at 584–585, 80 S.Ct. at 1354, 4 L.Ed.2d at 1419.

In addition to the broad grievance provision, the TPPA cites several specific contract sections that it claims have been violated by the city's refusal to arbitrate. The sections include 2129.01, .11, .14, .69, .77, .84, .88, and .89 of the agreement, as well as the contract as a whole. While no section specifically refers to the assignment of patrol officers, the TPPA argues that the city's attempt to proceed with the implementation of one-officer patrol units clearly breaches the agreement's provisions regarding safety, training, recognition, compensation, and grievance resolution.

On the other hand, the city argues that since no agreement section relied on by the TPPA refers specifically to the assignment of patrol officers, there can be no contract violation and, therefore, no grievance to arbitrate. However, the United States Supreme Court has rejected this narrow view, holding:

"The courts * * *, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, *or determining whether there is particular language in the written instrument which will support the claim.* The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not part of the * * * environment may be quite unaware." (Footnote omitted.) (Emphasis added.) *Steelworkers v. Am. Mfg. Co.* (1960), 363 U.S. 564, 568, 80 S.Ct. 1343, 1346–1347,

4 L.Ed.2d 1403, 1407. See *Westinghouse v. Hanford Atomic* (C.A.9, 1991), 940 F.2d 513, 516–517.

Thus, the interpretation of the agreement and its applicability to the grievance at issue is left solely to the determination of the arbitrator unless it is clearly excluded from arbitration.

In the case *sub judice,* * * * the grievance pertains to officer working conditions, in general, and in particular officer safety and the TPPA's contractual remedies of arbitration for claimed breaches of the agreement. Further, the court finds no express provision excluding the grievance from arbitration. *Warrior & Gulf, supra.* Based upon the foregoing, the court finds that the grievance is subject to the arbitration provision under Section 2129.14 of the agreement.

### 4. *Equitable Bases for Injunctive Relief*

Ohio state and federal courts have established the following equitable bases for injunctive relief:

"[a] the likelihood or probability of a plaintiff's success on the merits;

"[b] whether the issuance of the injunction will prevent irreparable harm to the plaintiff;

"[c] what injury to others will be caused by the granting of the injunction [balance of harms]; and

"[d] whether the public interest will be served by the granting of the injunction." *Corbett v. Ohio Bldg. Auth.* (1993), 86 Ohio App.3d 44, 49, 619 N.E.2d 1145, 1148, citing *In re DeLorean Motor Co.* (C.A.6, 1985), 755 F.2d 1223, 1228.

In determining whether to grant injunctive relief, courts have recognized that no one factor is dispositive and all must be balanced with the flexibility inherent to the laws of equity. *Royal Appliance Mfg. Co. v. Hoover Co., Inc.* (N.D.Ohio 1994), 845 F.Supp. 469, 471; *Friendship Materials, Inc. v. Michigan Brick, Inc.* (C.A.6, 1982), 679 F.2d 100, 105.

#### (a) Success on the Merits

Where the subject of a dispute is the arbitrability of a grievance, a requirement that the plaintiff show a likelihood of success on the merits of the grievance would usurp the arbitrator's function and constitute judicial preemption of the arbitral process. *Internatl. Assn. of Machinists v. Panoramic Corp.* (C.A.7, 1981), 668 F.2d 276, 284. A plaintiff has made a sufficient showing of a likelihood of success on the merits where it is shown that the position to be

espoused in arbitration is sound enough to prevent the arbitration from being futile. *Id.* at 284–285.

In the present action, the court * * * made its determination of arbitrability based upon provisions in the agreement including a broad grievance/arbitration clause covering "any dispute or difference * * * as to the interpretation or application of any provisions of this agreement"; a mission statement applying the agreement to, *inter alia,* "terms and other conditions of employment"; and safety provisions. The court further recognized and applied case law establishing a presumption of arbitrability in the absence of specific evidence to exclude the claim. *AT&T,* 475 U.S. at 650, 106 S.Ct. at 1419, 89 L.Ed.2d at 656–657. These same factors are sufficient to show that arbitration of the grievance at issue is not a futile endeavor, *Panoramic, supra,* and, accordingly, the court finds that the TPPA has a likelihood of success on the merits.

(b) Irreparable Harm.

The TPPA argues that the irreparable harm threatened, if injunctive relief is denied, is (1) to the TPPA members' physical safety if required to patrol high crime areas in one-officer patrol units, and (2) to the TPPA's guaranteed contractual remedy of arbitration for claimed breaches of the agreement.

Relative to members' physical safety if required to patrol high crime areas in one-officer patrol units, * * * the staffing of patrol units is a safety, rather than management, issue. Therefore, the potential harm, even to a single officer, is sufficient to make the required showing.

As to the contractual remedy, the court agrees with plaintiff's Proposed Conclusion of Law No. 31 that absent injunctive relief, the TPPA "will also suffer irreparable harm by virtue of the fact that it will be left with no adequate remedy of law. * * * [N]o Arbitrator's remedy can rectify the undermining of the contractual grievance mechanisms as an enforcement tool. Thus, while the TPPA has a remedy at law through grievance arbitration, the remedy is ineffectual and meaningless absent injunctive relief."

(c) Balance of Hardships

As previously found, the immediate and irreparable harm threatened to members of the TPPA relates to (1) their physical safety and (2) the TPPA, as a bargaining representative, and the guaranteed contractual remedy of arbitration for claimed breaches of the agreement.

The city has shown no hardship resulting if this court were to grant injunctive relief. Chief Galvin testified that the Toledo Police Department will not increase the number of patrol officers on the beat, nor will the Chief require any

additional training of the officers assigned to the one-officer patrol units. Chief Galvin further testified that he will not modify dispatching procedures or 911 protocol. Further, any exposure to liability by the city based on injury or death to officers assigned to the one-officer patrol units would be avoided by the granting of the permanent injunction.

In balancing the harm/hardship that would be sustained by the TPPA and the city, the evidence clearly establishes that hardships that will be sustained by the TPPA clearly outweigh any conceivable hardship sustained by the city.

(d) Public Interest

The court finds that the public interest would be served if the TPPA were granted injunctive relief. In addition to the increased risk of harm to the officers responding to calls in one-officer patrol units, there is a corollary risk to citizens who may be exposed to a greater threat of harm if being assisted by one- versus two-officer units. Moreover, the city's own report of July 12, 1996 further supports that the public will be served by injunctive relief. (Complaint, Exh. C.) See the court's Findings of Fact, Paragraph 11. Last, the public interest is served by enforcing the arbitration clause of the agreement, which is an efficient and cost-effective method to address labor disputes relating to the Agreement.

Applying the prerequisites for a *status quo* injunction in *Lester Engineering, supra*, including the equitable considerations, to the case *sub judice*, the court finds that the TPPA and its members are without an adequate remedy at law and will suffer immediate and irreparable harm, injury, and damage unless the permanent injunction is granted. Therefore, based upon the foregoing, the court hereby enters a preliminary and permanent injunction enjoining the defendant city from implementing its proposed expansion of one-officer patrol units prior to the arbitration of the TPPA's February 24, 1997 grievance.