**OHIO PATROLMEN'S BENEVOLENT ASSOCIATION et al., Appellants,**

v.

**VILLAGE OF LORDSTOWN, Appellee.**

[Cite as *Ohio Patrolmen's Benevolent Assn. v. Lordstown* (1997), 118 Ohio App.3d 9.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 96–T–5461.

Decided Jan. 27, 1997.

*Kevin P. Powers,* for appellants.

*Harrington & Mitchell, Ltd.,* and *Paul M. Dutton,* for appellee.

---

NADER, Judge.

This is an accelerated appeal from a judgment rendered in the Trumbull County Court of Common Pleas denying the petition of plaintiff-appellant, Ohio Patrolmen's Benevolent Association ("OPBA"), to compel the arbitration of a dispute with defendant-appellee, village of Lordstown ("Lordstown").

On August 20, 1995, Sergeant Thomas Horvath of the Lordstown Police Department was arrested for driving under the influence of alcohol and domestic violence. On August 23, 1995, Chief of Police William A. Catlin unilaterally determined that there was just cause for disciplinary action, placed Horvath on "administrative leave," and ordered a psychological evaluation to determine his fitness for duty. This period of suspension lasted approximately ten weeks, during which Horvath was forced to expend his accumulated vacation time and sick leave. After the evaluation, Chief Catlin determined that Horvath was unfit for duty until he obtained treatment for an alcohol-abuse problem. Horvath's ultimate fate is not clearly ascertainable from the record.

OPBA considered the determination that there was just cause to suspend Horvath pending a fitness evaluation to be a matter subject to the terms of a collective bargaining agreement between the police officers and Lordstown. In its view, Chief Catlin had no power to make that determination unilaterally, and the OPBA and Horvath met with Catlin on November 7, 1995, to discuss the matter. Catlin refused to reinstate Horvath's sick leave and vacation time, so the OPBA brought a grievance to the city council. The city council concluded that Chief Catlin had exclusive authority to determine whether there was just cause to

discipline one of his officers. Accordingly, the council denied OPBA's grievance on November 17, 1995. Four days later, OPBA sought to initiate binding arbitration pursuant to the grievance resolution procedures in the collective bargaining agreement ("CBA"). Lordstown refused to submit the matter to arbitration.

On January 18, 1996, OPBA filed a petition to compel arbitration pursuant to R.C. 2711.03 in the Trumbull County Court of Common Pleas. On April 9, 1996, the trial court granted Lordstown's motion for summary judgment and denied OPBA's motion for the same. This appeal followed. In its single assignment of error, the OPBA argues that the trial court erred in granting Lordstown's motion for summary judgment and in denying its own. We agree.

Public policy favors the arbitrability of labor disputes. *Davidson v. Bucklew* (1992), 90 Ohio App.3d 328, 331, 629 N.E.2d 456, 457–458. However, an employer, whether public or private, can be compelled to arbitrate only disputes which it actually agreed to arbitrate. *Painesville Twp. Local School Dist. v. Natl. Energy Mgt. Inst.* (1996), 113 Ohio App.3d 687, 694–695, 681 N.E.2d 1369, 1374. Therefore, the issue "whether a controversy is arbitrable under the provision of a contract[ ] is a question for the court to decide upon examination of the contract." *Divine Constr. Co. v. Ohio Am. Water Co.* (1991), 75 Ohio App.3d 311, 316, 599 N.E.2d 388, 391.

"A clause in a contract providing for dispute resolution by arbitration should not be denied effect unless it may be said with positive assurance that the subject arbitration clause is not susceptible [of] an interpretation that covers the asserted dispute." *Didado v. Lamson & Sessions Co.* (1992), 81 Ohio App.3d 302, 304, 610 N.E.2d 1085, 1087.

In the contract at issue here, Section 2, Article 27 of the CBA sets forth a rigid system of progressive discipline to be applied in all cases except where the employee committed "gross misconduct." The sequence begins with a verbal reprimand for the first offense. For the second offense, the required disciplinary action is only a written reprimand. For the third offense, a three-day suspension is in order. For the fourth offense, the suspension is increased to four days. For the fifth and final offense, Lordstown must initiate removal proceedings under R.C. 737.19(B).[1]

---

1. The text of the contract actually says the village must conduct removal proceedings under R.C. 737.171. But that section deals only with the removal of the marshal himself. Proceedings to terminate the employment of a deputy are set forth under R.C. 737.19(B). Apparently, the contract contains a typo.

Chief Catlin did not adhere to this framework. He apparently determined that Horvath's conduct amounted to "gross misconduct" and selected a suspension of unspecified duration as the appropriate disciplinary remedy. The removal statute, R.C. 737.19(B), requires that he must have had "just cause" before taking such action.

Section 1(B), Article 4 of the CBA reserves to the employer the right to "reprimand, suspend, discharge, or discipline" a deputy "for just cause." This section would appear to reserve the employer's statutory right to make the cause determination, label some behavior "gross misconduct," bypass the progressive system of discipline, and suspend an officer after the first offense.

On the other hand, Section 1, Article 27 of the CBA echoes the statutory requirement that the employer have "just cause" to suspend or discharge a deputy. What is the purpose of this contractual provision? The statute already requires that the employer have just cause to suspend or discharge a deputy. If the parties had meant to leave this determination to the employer, there would be no need for this contractual provision. It is already bound by the statute. We cannot read the "just cause" provision in the contract as merely reiterating the statute; we must interpret this provision as intended to accomplish some purpose. *Affiliated FM Ins. Co. v. Owens–Corning Fiberglas Corp.* (C.A.6, 1994), 16 F.3d 684, 686 ("In construing a contract, a court * * * must give meaning to every paragraph, clause, phrase and word, omitting nothing as meaningless, or surplusage * * *."); *Prudential Ins. Co. v. Corporate Circle* (1995), 103 Ohio App.3d 93, 98, 658 N.E.2d 1066, 1069 (contracts must be interpreted in such a manner as to give effect to every provision).

By including a contractual provision requiring that the employer have "just cause," we think the employer must apply *that provision* in making the determination whether to take serious disciplinary action. The employer's determination that, in any given instance, there is "just cause" or that a particular offense constitutes "gross misconduct" becomes, in essence, an interpretation of a contractual provision. Section 1, Article 28 of the CBA defines a "grievance" as "*any dispute * * * over any matter* involving the *interpretation, application* or violation of any provision of this Agreement." (Emphasis added.) Thus, the dispute between the parties as to whether there is just cause to skip the progressive system of discipline and immediately suspend a deputy for the first offense falls within the definition of a "grievance," and the dispute is therefore subject to the grievance resolution procedures, which culminate in arbitration.

A review of the relevant case law confirms this conclusion.

In *Stillings v. Franklin Twp. Bd. of Trustees* (1994), 97 Ohio App.3d 504, 646 N.E.2d 1184, the township entered into a collective bargaining agreement with its police officers. The Chief of the Franklin Township Police Department ordered

an internal investigation into the conduct by Officer Stillings involving an incident where he issued a "delayed traffic citation" to a township citizen. Apparently, the chief sought an order from the board of trustees to discharge Stillings. The board agreed that Stillings was guilty of misconduct, and discharged him. Stillings filed a complaint to compel arbitration of the question whether there was just cause to discharge him. The trial court agreed, and ordered the matter referred to arbitrators. The arbitrators found that there was no just cause to discharge Stillings, and ordered him reinstated with back pay. The township appealed, arguing that the "just cause" issue was not arbitrable.

The collective bargaining agreement in the *Stillings* case had the following characteristics:

"Article 6 of the collective bargaining agreement at issue provides the following definition of a 'grievance':

" 'A grievance is a dispute over the specific terms and conditions of this agreement itself including the interpretation, application or alleged violation of specific terms of this Agreement. No other dispute of any nature is considered a grievance for the purposes of this agreement. *A grievance does not include any matters reserved to public employers under Section 4117.08 of the Ohio Revised Code.*' (Emphasis added.)

"Article 6 further provides:

" 'The arbitrators shall be expressly limited to the meaning, intent or application of the provisions of this agreement. The arbitrators shall have no power to add to, detract from, or alter in any way the provisions of this agreement.'

"Article 5 enumerates the matters that are designated in Article 6 as *not* being within the scope of the employee grievance procedure. Entitled 'Management Rights,' Article 5 provides:

" 'The Labor Council [the police officer's union] recognizes those rights that are established under [Section] 4117.08(C) of the Ohio Revised Code as management rights enumerated as follows: 

" ' * * *

" 'E. Suspend, discipline, demote or discharge for just cause[.]' " *Stillings*, 97 Ohio App.3d at 507, 646 N.E.2d at 1186.

The Ninth District Court of Appeals agreed that these provisions, when taken together, excluded the "just cause" issue from the definition of a "grievance" and, hence, from arbitration. Judge Reece wrote:

"Taken together, we find that these provisions clearly and unambiguously establish that employee discipline is a matter that has been reserved to the board

and is not covered by the terms of the parties' collective bargaining agreement."
*Id.*

Further:

"It is clear from the face of the parties' collective bargaining agreement that they created an arbitration clause restricting arbitration to grievances covered by the terms of the agreement. Article 6 of the agreement expressly provides that '[a] grievance does not include any matters reserved to public employers under Section 4117.08 of the Ohio Revised Code.' Under R.C. 4117.08(C)(5), the right to '[s]uspend, discipline, demote, or discharge for just cause' is reserved to public employers. Thus, the parties' collective bargaining agreement expressly excludes from its coverage grievances related to the discipline or discharge of an employee. As a result, Stillings's grievance that he was discharged without just cause is not arbitrable." *Id.* at 508, 646 N.E.2d at 1187.

Our case is similar to *Stillings* in some respects. R.C. 737.19(B) reserves the exclusive right to suspend village deputies to the marshal, just as R.C. 737.12 reserves that power over municipal police officers to the chief of police. R.C. 4117.08(C)(5) applies in both cases. In both cases, the employers expressly reserved the right to suspend and discharge employees for just cause.

However, there are two critical differences. First, our CBA does not contain an express exclusion of all R.C. 4117.08 matters from the definition of a "grievance." Second, it does not appear from the *Stillings* opinion that the labor agreement at issue in that case contained an extra clause whereby the township contractually agreed not to discipline its officers except for just cause, as does the Lordstown CBA. We do not know how the *Stillings* court would have construed our agreement given these differences. Thus, *Stillings* is distinguishable.

Instead, the reasoning in *Huber Hts. v. Am. Fedn. of State, Cty. & Mun. Emp., Ohio Council 8* (Feb. 10, 1995), Montgomery App. No. 14762, unreported, 1995 WL 51091, is more suited to the contract under our review. The city entered into a collective bargaining agreement with its municipal employees. Pursuant to the terms of this agreement, the city manager held a predisciplinary conference with a street maintenance employee and determined that there was just cause to discharge him. The employee grieved his discharge to the city, which denied a grievance. The union submitted a request that an arbitrator decide whether there was just cause to discharge the employee. The arbitrator heard the case and found that the city had just cause, but that the city violated the employee's contractual and due process rights (due to disallowance of cross-examination). The arbitrator ordered reinstatement with back pay. The city appealed the arbitrator's adverse ruling to the court of common pleas, which reversed and vacated the arbitrator's award. The employee appealed.

The court of appeals first considered whether the matter of just cause was within the scope of the bargaining agreement and thus a proper issue for arbitration. Section 9.5 of that agreement stipulated that when the city determined there was just cause to discipline .an employee, it must hold a pre-disciplinary conference. Therefore, under Section 9.5, the arbitrator had to determine whether there was just cause in order to conclude that a hearing was necessary in the first place.

Judge Brogan wrote:

"The collective bargaining agreement grants to the City the right '[t]o suspend, discipline, demote, or discharge for just cause' its employees. But Section 9.1 of the contract makes it clear that the City may discipline its employees 'only for just cause.' We do not have the benefit of a clear legal definition of 'just cause.' *Irvine v. State Unemp. Comp. Bd. of Rev.* (1985), 19 Ohio St.3d 15, 17 [19 OBR 12, 14–15, 482 N.E.2d 587, 589–590]. But we can agree that for 'discharges under a collective bargaining agreement, this definition of 'just cause' equates to *a determination* whether the employee, by his actions, demonstrated an unreasonable disregard for his employer's best interests.' *Youngstown Aluminum Prods., Inc. v. Steinbacher* (Jan. 9, 1987), Mahoning App. No. 86 C.A. 50, unreported [1987 WL 5480]. (Emphasis added.)" *Huber Hts.* at 3.

The court then determined that the issue of just cause and the issue of the procedures used in the predisciplinary conference were both proper subjects for arbitration. Although Judge Frederick N. Young dissented on another point later in the opinion, all three judges agreed that the "just cause" issue was arbitrable.

The CBA in the case at bar bears many similarities to the contract at issue in *Huber Heights*. Although both contracts reserve the right to determine just cause for discipline to the employer, there is another contractual provision forbidding the employer from disciplining an employee except for just cause. Also, neither contract specifically exempts all R.C. 4117.08 matters from the definition of a "grievance."

If the parties here meant to exclude the "just cause" determination from arbitration, they could have provided an express exclusionary clause in their definition of a "grievance," as the parties in *Stillings* had done. Alternatively, to eliminate any ambiguity, and avoid the line of reasoning in *Huber Heights*, the parties could have simply omitted the "just cause" clause from the contract. However, this clause does exist. Therefore, there is at least some ambiguity whether the parties meant for this issue to be considered a "grievance" and thus subject to arbitration.

As we must resolve all doubts in favor of arbitrability, *Internatl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union 20 v. Toledo* (1988), 48 Ohio App.3d 11, 13, 548 N.E.2d 257, 259–260, we cannot say, "with positive assurance," that the CBA will admit no possible interpretation whereby the just cause determination is subject to arbitration. *Didado.* Accordingly, we hold this dispute to be arbitrable.

The judgment of the trial court is reversed, and the cause is remanded to the trial court for an order referring the cause to arbitration in accordance with the agreement.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY, J., concurs.

FORD, P.J., dissents.

FORD, Presiding Judge, dissenting.

I respectfully dissent from the majority's opinion because I fail to perceive any ambiguity in the CBA's requirement for "just cause" to discipline officers. "Just cause" merely sets forth a common standard of employee discipline usually involving suspension or separation from the workplace. It has been implemented statutorily in Ohio. See, *e.g.,* R.C. 3319.16 and 4141.29. This writer perceives nothing inherently ambiguous in the CBA's use of the term "just cause," nor simply because the standard is expressed in a clause of the CBA separate from the disciplinary clause. Further, I cannot agree that the term "just cause" is ambiguous when it is read *in pari materia* with Section 1(B), Article 4 and Section 1, Article 27 of the CBA.

The majority notes that R.C. 737.19(B) requires the marshal of a village to have "just cause" to suspend an officer. However, R.C. 737.19(B) also gives the marshal the *"exclusive right* to suspend any of the deputies, officers, or employees in the village police department who are under his management and control, for * * * just cause." (Emphasis added.) This statute is consistent with Section 1(B), Article 4 of the CBA, entitled "Management Rights," which reserves the right and allows the employer "to reprimand, suspend, discharge, or discipline" an employee "for just cause." Section 2, Article 27 of the CBA outlines the employee disciplinary procedures. This section again states that "[n]o employee shall be reduced in pay, suspended or discharged except for just cause."

I do not subscribe to the conclusion that the restatement of the "just cause" standard or requirement in the sections addressing management rights and

employee discipline creates ambiguity in the CBA concerning the interpretation of these respective contractual provisions.

The majority manifests what appears to this writer to be a strained analysis in determining an ambiguity in the CBA regarding this issue. An appellate court will not read ambiguity into an agreement when it does not otherwise exist. *Hastings Mut. Ins. Co. v. Clyne* (1993), 87 Ohio App.3d 198, 205, 621 N.E.2d 1355, 1359–1360. The term "just cause" has often been the subject of judicial interpretation. Consequently, I fathom no difficulty understanding its meaning, since the term has been judicially defined frequently. For example, the Supreme Court of Ohio has defined "just cause" for purposes of the discharge of a police officer in the unemployment compensation context as " ' "that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." ' " *Warrensville Hts. v. Jennings* (1991), 58 Ohio St.3d 206, 207, 569 N.E.2d 489, 491.

The primary distinction between the language in *Stillings* and that of the present case is that the term "just cause" is contained within the "Management Rights" reservation clause there, and not in a separate clause as here. Under the structure of the two CBA's my view is that this is a difference of no substance.

I also do not agree with the majority's reliance upon *Huber Heights*. In that case, the issues were whether the arbitrator exceeded his authority in granting an award and whether the court of common pleas applied the proper standard of review in vacating the arbitrator's award. *Id.* at 2. Therefore, the issue in *Huber Heights* was not whether the dispute was arbitrable, but whether the arbitrator had the authority to render the chosen award.

Simply stated, neither the "just cause" standard of employee discipline nor the manner in which it is implemented in the CBA poses any real interpretive ambiguity providing a predicate for triggering the arbitration clause contained in the CBA. The "just cause" standard here merely sets the stage for adversarial factual disputation subject to an administrative appeal process. It is not a syllogism for an analytical tangled web in need of solutions in arbitration.

Therefore, since I do not conclude that there is any ambiguity in the use of the term "just cause," I respectfully dissent.