DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, the City of Akron ("the City"), appeals the judgment of the Summit County Court of Common Pleas that granted a motion to compel arbitration filed by the Fraternal Order of Police, Akron Lodge No. 7 ("the Union"). We affirm.
 I. {¶ 2} The Union is the exclusive representative of employees of the Akron Police Department for purposes of collective bargaining. The City and the Union are parties to a collective bargaining agreement ("the CBA") which contains a four-step grievance procedure that culminates in binding arbitration. The CBA *Page 2 
also contains a provision regarding the City's obligation to defend City employees who are named in civil lawsuits. That provision states:
 "Pursuant to Ordinance No. 101-1978, the City of Akron has created a fund known as `Risk Management Fund' hereinafter referred to as the Fund.
 "As the Fund pertains to Akron City Police Officers, the purpose of the Fund is to provide protection against monetary judgments as a result of a cause of action arising out of and during the scope of said officer's employment.
 "Defense of a civil action against a police officer for a cause of action arising out of and during the course of his employment will be by the City of Akron Department of Law under the direction of the Law Director. Only in cases of a conflict of representation of both the police officer and the City of Akron by the Department of Law will an officer be permitted to retain his own representation and still be able to participate in the Fund."
 {¶ 3} On July 31, 2003, Sergeant Sean Matheny was served with summons in a civil case filed by Linda Karlen, an inmate at the Ohio Reformatory for Women. Sergeant Matheny forwarded a copy of the complaint through his chain of command with a request for the City to provide him with a defense pursuant to the CBA. The City refused, maintaining that a review of the complaint, the City's internal investigation file, and Sergeant Matheny's own statements indicated that the lawsuit arose from conduct "outside the scope of his employment or official responsibilities as a police officer." On August 13, 2003, Sergeant Matheny grieved the City's decision to deny him a legal defense, arguing that the City's refusal violated Article XV of the CBA. *Page 3 
 {¶ 4} Sergeant Matheny was represented by counsel obtained at his own expense throughout the Karlen litigation. The matter of the City's duty to defend Sergeant Matheny, however, also arose in the course of the underlying litigation pursuant to R.C. 2744.07(A). On December 9, 2003, the City and Matheny agreed that the City would submit the issue of its statutory duty to provide a defense to the court once a ruling on dispositive motions was entered. The court granted summary judgment to all defendants remaining in the action, and on March 18, 2004, the City moved the court to determine its statutory obligation to defend Sergeant Matheny.
 {¶ 5} Throughout the course of the Karlen litigation, Sergeant Matheny's grievance remained pending. The grievance was initially denied, and the City upheld the denial through the remaining levels of the parties' grievance procedure until the Union demanded arbitration. On January 10, 2006, the City notified the Union that it would not arbitrate the dispute. On March 3, 2006, the Union filed a complaint to compel arbitration pursuant to R.C. 2711.03. The parties each moved for summary judgment. On March 9, 2007, the trial court denied the City's motion, granted the Union's motion, and ordered the parties to submit Sergeant Matheny's grievance to arbitration under Article V of the CBA. The City timely appealed, raising five assignments of error related to the trial court's order granting summary judgment to the Union. *Page 4 
 II. Summary Judgment Standard {¶ 6} In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829. In applying this standard, evidence is construed in favor of the nonmoving party, and summary judgment is appropriate if reasonable minds could only conclude that judgment should be entered in favor of the movant nonetheless. Horton v. Harwich Chem. Corp. (1995),73 Ohio St.3d 679, 686-87.
 III. {¶ 7} The City maintains that the trial court erred in granting summary judgment to the Union because disputes involving the City's duty to defend law enforcement officers that arise under Article XV of the CBA are not arbitrable under the procedure set forth in Article V. In the alternative, the City argues that even if this dispute is arbitrable under Article V, summary judgment should not have been granted to the Union because (1) the same issue with respect to the same parties has been fully argued and is pending before the Summit County Court of Common Pleas in the Karlen litigation; and (2) the Union acted in a manner inconsistent with an intent to arbitrate, barring arbitration under the doctrines of waiver, laches, and estoppel. The City has not assigned as error the *Page 5 
trial court's denial of its own motion for summary judgment. We overrule each of the City's assignments of error, which are rearranged for ease of disposition.
 ASSIGNMENT OF ERROR III "The trial court erred in finding that the City must arbitrate the issue of whether it had a duty to defend Sergeant Matheny where the collective bargaining agreement provides a different mechanism for resolving such disputes."
 {¶ 8} The City has argued that the trial court erred by granting summary judgment to the Union because this dispute is not arbitrable under Article V. Specifically, the City maintains that disputes regarding the City's duty to defend law enforcement officers are not subject to the CBA's general arbitration clause, but must be referred to the tripartite panel referenced in Article XV. The facts material to resolution of this assignment of error are not disputed.
 {¶ 9} R.C. 2711.03(A) provides that a party to a written arbitration agreement may petition the court of common pleas for an order compelling arbitration of a dispute when another party to the agreement declines arbitration. While public policy favors arbitration of labor disputes, an employer can be compelled to arbitrate only those disputes that arise under the applicable collective bargaining agreement. Ohio Patrolmen'sBenevolent Association v. Village of Lordstown (1997),118 Ohio App.3d 9, 11. The arbitrability of a labor dispute is therefore determined with reference to the terms of the applicable collective bargaining agreement, and an arbitration clause contained therein must be given effect unless "it may be said with positive assurance that the subject arbitration *Page 6 
clause is not susceptible [of] an interpretation that covers the asserted dispute." (Alteration in original.) Id., quoting Didado v.Lamson Sessions Co. (1992), 81 Ohio App.3d 302, 304.
 {¶ 10} The CBA between the City and the Union contains a five-step grievance procedure, the final step of which is mandatory binding arbitration. Steps one through three may be pursued by either the grievant or the Union, and each step is subject to a series of timelines of five working days in length. If a grievance remains unresolved after completion of Step 3, however, the process changes significantly. Past that stage, further action must be taken by the FOP rather than the individual grievant, and the timelines for action — both on the part of the City and the Union — are decidedly more generous:
 "STEP 3: * * *
 "A. If the grievance is not settled at STEP 3, then the grievance shall be presented to the FOP grievance committee for merit review prior to initiating any further steps in this process. The grievance committee shall meet within thirty (30) calendar days of the receipt of the STEP 3 reply to the grievance.
 "STEP 4: If the grievance is not settled at STEP 3, the FOP may appeal in writing to the Deputy Mayor for Labor Relations. Such appeal must be submitted within seven (7) working days after the meeting of the grievance committee. The Deputy Mayor or his/her designated representative shall meet within thirty (30) calendar days with the FOP to attempt to resolve the grievance. The Deputy Mayor shall reply to the FOP in writing within ten (10) working days following such meeting."
Following Step 4, a grievance may be submitted to arbitration by either party by providing notice of the intent to arbitrate within twenty-one calendar days. *Page 7 
 {¶ 11} Article V defines a grievance as "a complaint, dispute or controversy in which it is claimed that either party has failed in an obligation under this agreement and which involves the meaning, interpretation or application of this [agreement." As is evident from the grievance and arbitration procedure, any grievance that is unresolved after the Step 4 decision may be advanced to arbitration by the City or the Union. The scope of the arbitration clause at issue in this case, therefore, covers any and all complaints, disputes, and controversies "in which it is claimed that either party has failed in an obligation under [the CBA] and which involves the meaning, interpretation or application" of the CBA.
 {¶ 12} The breadth of this arbitration clause is evident, and we must first determine whether, considering this breadth of scope, we may say "with positive assurance" that the clause cannot be interpreted in a manner that covers this dispute. See Ohio Patrolmen's BenevolentAssociation v. Village of Lordstown, 118 Ohio App.3d at 11. In other words, if the arbitration clause can be interpreted in any manner that covers this dispute, that interpretation must be given effect and the matter must be considered arbitrable.
 {¶ 13} The parties agree that Article V sets forth a broad arbitration clause. The City, however, maintains that Article XV contains a specific alternative dispute mechanism for resolving all matters related to its duty to defend:
 "Defense of a civil action against a police officer for a cause of action arising out of and during the course of his employment will be by the City of Akron Department of Law under the direction of the Law Director. Only in cases of a conflict of representation of both *Page 8 
the police officer and the City of Akron by the Department of Law will an officer be permitted to retain his own representation and still be able to participate in the Fund.
 "* * *
 "In the event of disagreement between the police officer and the Law Director regarding the services of another attorney, an ad hoc tripartite panel * * * shall be established to resolve the dispute. It is understood that this panel may not bind the Akron City Council."
The City's position is that all disputes arising under Article XV are subject to nonbinding resolution by the tripartite panel rather to than recourse through Article V. This interpretation contradicts the clear language of Article XV and disregards the context in which this language is placed.
 {¶ 14} The tripartite panel referenced in Article XV becomes relevant only when there is a dispute "between the police officer and the Law Director regarding the services of another attorney." In the ordinary course of events, Article XV provides that representation "will be by the City of Akron Department of Law under the direction of the Law Director." The plain language of Article XV indicates that "the services of another attorney" are not at issue in every instance in which Article XV comes into play, but "[o]nly in cases of a conflict of representation of both the police officer and the City of Akron by the Department of Law[.]" The context indicates that the most natural application of the dispute mechanism contained in Article XV is to the limited circumstances in which the City has determined that a defense will be provided to an officer, but a dispute has arisen regarding whether that defense is to be provided by the Law Director or a *Page 9 
privately-retained attorney and whether a privately-retained attorney may be compensated from the Risk Management Fund.
 {¶ 15} This matter, in contrast, arises from a dispute over the threshold issue under Article XV — whether the City had an obligation to provide a defense to Sergeant Matheny in the first instance. As in this case, the denial of a defense to an officer based upon a determination that the cause of action did not arise out of and during the course of his employment is a controversy in which an officer claims that the City failed in its obligation to provide a defense under the CBA and which involves the meaning, interpretation or application of Article XV. This dispute falls outside the plain language of the alternative dispute resolution mechanism contained in Article XV. Instead, it is the proper subject of a grievance and, if unresolved after Step 4, of mandatory binding arbitration.
 {¶ 16} The arbitration clause in the CBA can plainly be interpreted to apply to the dispute at issue in this case. Accordingly, the trial court did not err in determining that the dispute is arbitrable. The City's third assignment of error is overruled.
 ASSIGNMENT OF ERROR I "The trial court erred in finding that the Karlen court did not retain jurisdiction to rule on whether the City had a duty to defend Sergeant Sean Matheny after it granted summary judgment to the defendants."
 {¶ 17} The City's first assignment of error is that the trial court erred in granting summary judgment to the Union based on the incorrect legal conclusion *Page 10 
that the court in the Karlen litigation lacked jurisdiction to rule on the City's motion filed pursuant to R.C. 2744.07(B). In effect, the City maintains that even if the subject matter of this dispute is arbitrable, the trial court erred by granting summary judgment to the Union because the same issue is pending for resolution before the court in the Karlen litigation, which may yet result in a judgment in favor of the City: "Because the exact same issue is currently pending before theKarlen court, which has jurisdiction to resolve the dispute, the City should not be compelled to arbitrate the issue with the FOP." Assuming for purposes of argument that the court in the Karlen litigation retained jurisdiction to consider the City's motion as a postjudgment motion, the trial court did not err in granting summary judgment to the Union with respect to the relationship of the Karlen litigation to this dispute.
 {¶ 18} The City's position is twofold: (1) the underlying litigation involved the same issue as is presented in this dispute; and (2) the Union was in privity with Sergeant Matheny or, if not, was aware of the issue presented and waived participation by electing not to intervene. This position rests on the assumption, which the City asserts without legal support, that once the issue of the statutory duty to defend was raised in the Karlen litigation, the Union was precluded from raising the City's contractual duty to defend through the grievance procedure. We note that this court is not required to construct legal arguments on behalf of a party. Nonetheless, because this argument is entwined with the City's remaining *Page 11 
arguments, we address this assignment of error in the interest of efficient disposition.
 {¶ 19} Issue preclusion is a component of the doctrine of res judicata, which provides that "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, syllabus. If a matter has not been passed upon or decided conclusively in a prior proceeding, issue preclusion does not apply. See State exrel. Kroger Co. v. Indus. Comm. of Ohio (1998), 80 Ohio St.3d 649, 651. Similarly, when a court declines to consider an issue — in effect rendering no judgment at all on the merits — there has not been a final judgment on the merits for purposes of res judicata. See id. at 652.
 {¶ 20} Sergeant Matheny and the City agreed that the matter of the City's obligation to defend Sergeant Matheny in the Karlen litigation under R.C. 2744.07 would be submitted to the court after they obtained a ruling on dispositive motions. The City filed its motion and Sergeant Matheny responded. The court granted summary judgment to the City and Sergeant Matheny, but did not specifically rule on the City's statutory duty to defend. Because the court has rendered no judgment on the merits of the City's motion, the fact that the issue is pending in the Karlen litigation has no preclusive effect on the parties by virtue of res judicata. *Page 12 
 {¶ 21} Similarly, the fact that the City's motion regarding its statutory duty to defend was filed first and remains unresolved in the Karlen litigation did not preclude the Union from seeking an order compelling arbitration under the CBA. To the extent that the City asserts a form of jurisdictional priority between the Karlen litigation and this case, its arguments are without merit.
 {¶ 22} "As between courts of concurrent jurisdiction, the tribunal whose power is first invoked by the institution of proper proceedings acquires jurisdiction, to the exclusion of all other tribunals, to adjudicate upon the whole issue and to settle the rights of the parties." State ex rel. Phillips v. Polcar (1977), 50 Ohio St.2d 279, syllabus. Application of jurisdictional priority requires the same claims and the same causes of action in both suits. State ex rel.Dannaher v. Crawford (1997), 78 Ohio St.3d 391, 393. While the claims need not be identical in every respect, they must be "sufficiently similar such that each of the actions `comprises part of the `whole issue' that is within the exclusive jurisdiction of the court whose power is legally first invoked.'" Instant Win, Ltd. v. Summit Cty.Sheriff (Apr. 10, 2002), 9th Dist. No. 20762, at *1, quoting State exrel. Racing Guild of Ohio v. Morgan (1985), 17 Ohio St.3d 54, 56.
 {¶ 23} Claims are sufficiently similar for this purpose when they involve substantially the same parties and when a ruling by the second court to acquire jurisdiction could affect or interfere with resolution of the claims pending in the court in which the action was filed in the first instance. Instant Win, Ltd. at *1. *Page 13 
The rule focuses on the nature of the claims actually before the court. Consequently, two claims may arise from the same subject matter and yet not be subject to the jurisdictional priority rule because the claims themselves are distinct. See, e.g., State ex rel. Republic Servs. ofOhio v. Pike Twp. Bd. of Trustees, 5th Dist. Nos. 2006 CA 00153, 2006 CA 00172, 2007-Ohio-2086, at ¶ 45-48 (holding that the jurisdictional priority rule did not bar an action for declaratory judgment of the constitutionality of a zoning ordinance when the first-filed case was an administrative appeal from a decision of a board of zoning appeals).
 {¶ 24} In this case, the jurisdictional priority rule does not apply because the nature of the claims pending before the trial court and the Karlen court are procedurally and substantively distinct and a ruling in the second could not affect or interfere with resolution of the claims pending in the first.
 {¶ 25} In the Karlen litigation, the City moved the trial court to determine its obligation to defend Sergeant Matheny under R.C.2744.07(A), which provides:
 "Except as otherwise provided in this division, a political subdivision shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation for damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental or proprietary function. The political subdivision has the duty to defend the employee if the act or omission occurred while the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities." *Page 14 
The City's motion was filed in the context of pending litigation following the City's refusal to provide a defense, as permitted by R.C.2744.07(C):
 "At the request of the political subdivision or the employee, the court shall order the motion to be heard at an oral hearing. At the hearing on the motion, the court shall consider all evidence and arguments submitted by the parties. In determining whether a political subdivision has a duty to defend the employee in the action, the court shall determine whether the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities. The pleadings shall not be determinative of whether the employee acted in good faith or was manifestly outside the scope of employment or official responsibilities.
 "If the court determines that the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities, the court shall order the political subdivision to defend the employee in the action."
The City's motion, therefore, invoked a statutory procedure for determining Matheny's right to a statutory benefit. In accordance with R.C. 2744.07(C), the matter before the trial court on the City's motion is a determination of "whether the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities," considering not merely the pleadings, but "all evidence and arguments submitted by the parties."
 {¶ 26} In contrast, the matter before the trial court in this case was the arbitrability of Sergeant Matheny's grievance. This is a matter of contract construction which is limited in scope to the determination of whether there is any reasonable interpretation of the CBA through which this dispute could fall under the scope of the broad arbitration clause in Article V. Under this analysis, a court *Page 15 
may only consider the merits of the underlying dispute to the extent necessary to discern the intentions of the parties. "In deciding whether a dispute is arbitrable, the court should confine itself to deciding the issue of arbitrability. [T]he court may rule on the merits, if it must, to decide the arbitrability of an issue." (Internal citation omitted.)Cleveland Police Patrolmen's Assn. v. Cleveland (1994),95 Ohio App.3d 645, 651. Because the claims at issue in the Karlen litigation and this case are procedurally distinct, the Union was not barred by jurisdictional priority from seeking an order to compel arbitration of Sergeant Matheny's grievance.
 {¶ 27} The claims in the two cases are also substantively distinct despite the fact that they arise from a common nucleus of fact. Under R.C. 2744.07(A), a political subdivision is required to provide a defense to an employee for any act or omission connected with the performance of a governmental or proprietary function which occurred "while the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities[.]" A political subdivision is therefore relieved of the duty to defend only if (1) the pleadings do not allege that the act or omission occurred in connection with the performance of a governmental or proprietary function and (2) the act or omission was made in bad faith and manifestly outside the scope of employment. Article XV of the CBA requires the City to provide a defense only in those circumstances *Page 16 
in which the cause of action "aris[es] out of and during the scope of said officer's employment."
 {¶ 28} R.C. 2744.07(A) and Article XV differ in significant respects. Article XV lacks reference to the performance of a governmental or proprietary function and its terms refer to the nature of the cause of action rather than the underlying facts. Unlike Article XV, R.C.2744.07(C) specifies that a determination of the duty to defend must be made with reference not merely to the pleadings, but with a consideration of all evidence put forward by the parties. R.C. 2744.07
provides that the duty to defend attaches unless conduct is "manifestly" outside the scope of employment and in bad faith. Article XV, in contrast, does not have a bad faith limitation and does not specify that an employee's conduct must be manifestly beyond the scope of employment.
 {¶ 29} Therefore, while there is significant overlap between R.C.2744.07(A) and Article XV, the two are not coextensive and the claims at issue are substantively distinct because the analysis of the City's duty to defend under R.C. 2744.07 and the scope of the statutory duty could vary from the scope of the City's contractual duty to defend pursuant to the CBA on the facts of an individual case. Based on these considerations, we cannot conclude that the claims at issue in the *Page 17 
Karlen litigation and this case warrant application of jurisdictional priority.[1]
 {¶ 30} The City's argument that the Union should be barred from pursuing an action to compel arbitration under R.C. 2711.03 because the City's duty to defend remains at issue in the Karlen litigation is without merit because there is no final judgment on the merits of the City's R.C. 2744.07 motion. Additionally, the claims and substance at issue are distinct and jurisdictional priority does not bar the Union's complaint to compel arbitration. The trial court did not err in concluding that the pending motion in the Karlen litigation does not preclude a motion to compel arbitration in this case, and the City's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "The trial court erred in finding that the FOP did not waive any alleged right to arbitrate whether the City had a duty to defend Sergeant Matheny where the FOP and Sergeant Matheny both acted in a manner inconsistent with an intent to arbitrate the dispute."
 {¶ 31} In its second assignment of error, the City maintains that the trial court erred in granting summary judgment to the Union because the Union waived its right to seek arbitration by its own failure to intervene in the Karlen litigation and by virtue of Sergeant Matheny's acquiescence in the decision to submit the *Page 18 
matter of the City's statutory duty to defend to the trial court in that case. In essence, the City argues that even if the dispute is arbitrable under the relevant portions of the contract and even if the pending motion in the Karlen litigation did not preclude arbitration of Sergeant Matheny's grievance, the Union has acted in a manner inconsistent with an intention to arbitrate and the motion to compel arbitration should not have been granted.
 {¶ 32} Waiver of the right to arbitrate a dispute arises when the party seeking to compel arbitration has engaged in activity inconsistent with the intention to arbitrate that results in delay and prejudice to the other party. ACRS, Inc. v. Blue Cross Blue Shield ofMinnesota (1998), 131 Ohio App.3d 450, 456. The party asserting waiver has the "heavy burden" of proving that the party against whom waiver is asserted knew of the right to arbitration and acted inconsistently with it. Griffith v. Linton (1998), 130 Ohio App.3d 746, 751. The issue of waiver is fact-driven, taking into account evidence of the motives of the parties. Manos v. Vizar (July 9, 1997), 9th Dist. No. 96CA2581-M, at *2. Accordingly, a trial court reviews the assertion of waiver based on the totality of the surrounding circumstances. Fraternal Order ofPolice, Akron Lodge No. 7 v. Akron, 9th District No. 23332,2007-Ohio-958, at ¶ 23.
 {¶ 33} The City's argument regarding waiver is intertwined with the arguments set forth in its first assignment of error to the extent that both depend on congruence between the statutory duty to defend at issue in the Karlen litigation *Page 19 
and the contractual duty to defend. In this case, having determined that the matter of the City's statutory duty to defend Sergeant Matheny is distinct from its contractual obligations, this aspect of the City's argument regarding waiver fails as well. See, e.g., Fraternal Order ofPolice, Akron Lodge No. 7 v. Akron, 9th District No. 23332,2007-Ohio-958, at ¶ 24 (concluding that when an argument regarding res judicata and waiver were intertwined by the party asserting waiver, resolution of the res judicata argument in favor of the party seeking arbitration was dispositive of the waiver argument as well). The City's second assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "The trial court erred in granting the Union's motion for summary judgment because the Union cannot prevail as a matter of law since the doctrine of equitable estoppel bars the FOP's demand for arbitration over the City's alleged duty to defend Sergeant Matheny."
 ASSIGNMENT OF ERROR V "The trial court erred in granting the Union's motion for summary judgment because the Union cannot prevail as a matter of law because the doctrine of laches bars the FOP's demand for arbitration over the City's alleged duty to defend Sergeant Matheny."
 {¶ 34} The City's final argument is that the trial court erred in granting summary judgment to the Union because the Union's inactivity with regard to Sergeant Matheny's grievance and the Karlen litigation barred arbitration of the dispute under the doctrines of laches and estoppel. As with the City's second assignment of error, its position is that the Union's actions were inconsistent with *Page 20 
assertion of the right to arbitrate Sergeant Matheny's grievance and, even if the matter is arbitrable under the CBA, the trial court erred in granting summary judgment to the Union for that reason.
 {¶ 35} Unlike the City's first three assignments of error, which raise questions of law with respect to which the material facts are not disputed, the City's fourth and fifth assignments of error are dependant upon the City's factual allegations. Because the City failed to produce evidence contemplated by Civ.R. 56 with respect to its assertion of laches and estoppel, either in opposition to the Union's motion for summary judgment or in support of its own motion, we conclude that summary judgment was properly granted to the Union.
 {¶ 36} The party moving for summary judgment "`bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.'" Vahila v. Hall (1997), 77 Ohio St.3d 421,429, quoting Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
 {¶ 37} The City's argument regarding laches and equitable estoppel is that the Union's alleged failure to pursue arbitration of Sergeant Matheny's grievance was inconsistent with an intent to arbitrate. The defense of laches requires proof of unreasonable delay in asserting a claimed right without excuse; actual or constructive knowledge of the underlying injury; and prejudice to the party *Page 21 
asserting the defense. State ex rel. Carter v. N. Olmsted (1994),69 Ohio St.3d 315, 324. The equitable defense of estoppel "prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." State ex rel. Chavis v. Sycamore City School Dist.Bd. of Edn. (1994), 71 Ohio St.3d 26, 34. In the absence of proof of actual or constructive fraud, the doctrine of equitable estoppel will ordinarily not prevent relief. Id. at 35.
 {¶ 38} In support of its motion for summary judgment, the Union pointed to the grievance filed in August 2003 and to the CBA to establish that the Union initiated the grievance procedure set forth in Article V which culminates in mandatory binding arbitration. The Union also alleged various facts regarding the progress of the grievance procedure, but did not support those allegations with reference to an affidavit or to other evidence contemplated by Civ.R. 56(C). However minimally, therefore, the Union met its burden under Dresher and Civ.R. 56(C) to produce evidence of its intention to arbitrate by demonstrating that a grievance was initiated on Sergeant Matheny's behalf under Article V.
 {¶ 39} Having asserted that the Union delayed in asserting its rights to the detriment of the City notwithstanding the grievance filed under Article V, the City was required to point to some evidence indicating proof of unreasonable delay by the Union or actions that induced the City to rely on a false position regarding arbitration which constituted actual or constructive fraud. The City, however, *Page 22 
pointed to no such evidence. While it is apparent from the record that the grievance remained pending from August 2003 until the Union's complaint was filed in this action, the City produced no documentary evidence, deposition testimony, or affidavits tending to establish that the delay could be attributed to the action or inaction of either party. This court will not infer facts in the record from the unsupported statements of counsel.
 {¶ 40} Based on the record before it, the trial court properly determined that there were no genuine issues of material fact with respect to the Union's claim that Sergeant Matheny's grievance was arbitrable. The City produced no evidence in response to the Union's motion for summary judgment or in its own motion for summary judgment on essential elements of estoppel and laches. The City's fourth and fifth assignments of error are overruled.
 IV. {¶ 41} The trial court did not err in granting summary judgment to the Union and ordering this matter to proceed to arbitration. The City's five assignments of error are overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 23 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, J. WHITMORE, J. CONCUR
[1] At this point, we must point out that neither the Union nor the City provided any evidence in support of or in response to the motions for summary judgment that indicates how Article XV has been applied by the parties or by previous arbitration awards. Because the language of Article XV is clear, we look no further than its plain meaning for purposes of this opinion. *Page 1